MILLER et al. v. FIELDS. (No. (0420.)

Court of Civil Appeals of Texas. Dallas. July 6, 1929.

Rehearing Denied Sept. 28, 1929.

W. S. Bramlett, of Dallas, for appellants.
John A. Rawlins and W. I. Gamewell, both of Dallas, for appellee.

JONES, C. J. A suit was instituted by appellant L. B. Miller against appellee, C. L. Fields, to recover possession of certain described real estate in Dallas county, alleged to be in appellee's possession. Concurrently with the filing of such suit, appellant applied for, and had issued and served, a writ of sequestration, by the means of which he repossessed himself of the land. Appellant D. Miller was a surety on the sequestration bond. Plaintiff in said suit will be herein referred to as appellant. No replevy bond was filed by appellee, but he filed a cross-action against L. B. Miller and the said surety on the sequestration bond for damages, because of an alleged breach of the contract by appellant, under the terms of which appellee had entered into possession of the land. A judgment in favor of appellant for possession of the land, and in favor of appellee on his cross-action, in the sum of $1,689 actual and $250 exemplary damages, resulted from the trial. Appellant has duly perfected an appeal to this court on the judgment on the cross-action, in which D. Miller, as such surety, has joined. The following is a sufficient statement to understand the issues involved:

Appellant owned a 100-acre farm adjoining the village of Lisbon, Dallas county, and, according to the allegations of appellee in his cross-action, in the early part of December, 1925, an oral contract was entered into between appellant and appellee, under the terms of which appellee was to move into a house situated on the land, and for the year 1926 was to cultivate 22 acres of this land by planting 21 acres in cotton, one acre in potatoes, and was to oversee for appellant the cultivation of the remainder of the 100 acres, which was to be done by appellee and other farm hands employed by appellant. For the time used by appellee in working in either capacity for appellant, appellee was to receive $2 per day. Appellee was to be furnished all necessary tools, including tractors, plows, teams, the use of a cow or cows for milk for himself and family, and to be furnished a sow or sows, feed for these animals, and appellee to have one-half of the increase of the sow or sows furnished, and appellant the other one-half. It is also alleged that appellant guaranteed that appellee would receive from his share of the crop on the 22 acres, and from his employment in the other work, the sum of $2,500. One-half of the cotton and potatoes raised on the 22 acres was to be appellee's, and the other one-half was to be appellant's, as rental for the land.

Appellee moved into the house in December, 1925, but did not get possession of the land until in January, 1926. It is alleged that the

22 acres of land was carefully prepared for planting and that the potatoes were seasonably planted; that the remainder of the land, through appellee's work and the work of others employed by appellant, was also carefully prepared for planting, and that appellee was at all times able, ready, and willing to perform his entire part of the contract; that about April 15, 1926, appellee was served with the writ of sequestration, after a notice for him to vacate had theretofore been served upon him; that because of the writ of sequestration and the threat of the officer that he would have to move all of his household goods out of the house at once, or the officer would throw them out into the road, appellee moved from such place into a house rented by him and gave possession of the land; that he would not have done so except in obedience to said writ. The necessary allegations were made to form a basis for exemplary damages, because of the service of the writ of sequestration, and such damages were claimed. After appellee moved from the premises, he could not secure for cultivation another farm, but a short time thereafter he secured employment with a tractor company at $125 per month, worked for them for a period of time not definitely disclosed by the record, and later secured employment, after a few days of idleness, during which time he could not secure employment, with an automobile company at $25 per week; that he remained in such employment until about the first of November, 1926, when he ceased working for such company and was unable to secure employment for the remainder of the year. The amount of his earnings, while engaged in work after his eviction from the land, is not more definitely shown. The expenses incident to his employment with both of these companies were paid by the respective companies for which he worked; however, he had to pay rent on a house in which he and his family, consisting of his wife and two small children, could live. Appellee alleged items of actual damages resulting to him, in the amount of $1,689, independent of the $2,500 guaranty.

Appellant, by proper pleadings, denied that he had given to appellee the right to cultivate for himself any land, but alleged that the contract with appellee was for him to work and oversee the entire land, for which he was to be paid $2 per day, and that he was paid such sum for all of the time he worked. He denied also appellee's alleged guaranty of $2,500, and that he was to furnish him any sow or sows, or a cow; but did allege that he furnished him a cow and that appellee received milk for his family during the time he was on the place. He further alleged that he desired the land to be placed in a high state of cultivation and the Johnston grass on the place destroyed; that appellee's work during the time he was on the place was not satisfactory, and that the land prepared was unfit for planting, and that no effort was made to destroy the Johnston grass; that appellee failed to do the work in the manner required by the contract and thereby breached the contract, for which reason the notice was given and the writ of sequestration secured.

■ Some time preceding the trial of the case, appellee attempted to take appellant's ex parte deposition. Appellant appeared before the notary in obedience to a summons and demanded of such officer that he be allowed to take with him for an indefinite time the interrogatories, when he would return them and give his answer to each interrogatory. The notary denied this request and told him he would have to give his answer without taking the interrogatories into his possession, whereupon appellant stated that he would not answer them without such privilege, and the notary returned the deposition certifying these facts. This certificate does not show that any attempt was made by the notary to read the interrogatories to appellant. A written motion was filed by appellant to vacate the notary's certificate, in which it was stated that appellant was willing to answer the interrogatories. The order of the court on this motion is not in the record, nor does it appear that any action was taken thereon by the court, except from an oral statement of the court to the jury, to the effect that, under the court's construction of the law, the jury must take the facts stated in the interrogatory as confessed. This oral statement of the court appears in the statement of facts. The assignment of error on this motion cannot be considered.

The case was tried to a jury and submitted on special issues, and the findings material to this appeal are as follows:

In response to special issue No. 1, the jury found the contract, as alleged by appellee, was entered into between the parties; to special issue No. 2, the jury found that appellant made to appellee the guaranty of $2,500; to special issue No. 3, the jury found that during the time appellee occupied the land he substantially complied with the contract; on special issue No. 4, the jury found that appellee substantially complied with the conditions of the $2,500 guaranty; on special issue No. 5, the jury found that appellant breached the contract; on special issue No. 6, the jury found that appellant breached the contract in reference to the $2,500 guaranty; on special issue No. 7, the jury found that the statement of appellant in the affidavit for sequestration, to the effect that he "feared" appellee would injure the land, was false; on special issue No. 8, the jury found that appellant's act in causing the issuance of the writ of sequestration was malicious; on special issue No. 9, the jury found that appellant did not have probable cause to believe that appellee would injure the land during the pendency of this

suit; on special issue No. 10, the jury found that appellee was caused to move from the premises by virtue of the writ of sequestration; on special issue No. 11, the jury found that appellee suffered actual damages because of the issuance of the writ of sequestration; on special issue No. 12, the jury found that the actual damages suffered by appellee was the sum of $1,750; on special issue No. 13, the jury found that appellee was entitled to recover exemplary damages; on special issue No. 14, the jury found exemplary damages in the sum of $250. On these findings the court entered the judgment above described.

The case is before us on several assignments of error, but we find it only necessary to discuss those assignments which attack the judgment of the court in respect to the amount of actual damages rendered, and cross-assignments of appellee attacking the judgment of the court in respect to the same matter. The jury, in response to special issue No. 12, found that appellee had suffered actual damages in the amount of $1,750. The trial court ignored this finding and entered judgment on this item for the sum of $1,689. The only conclusion to be drawn from this act of the court is that the finding of the jury as to the amount of actual damages was excessive, in that the evidence on this issue would not support a finding in the amount returned by the jury, but that it would support the sum of $1,689, the amount rendered by the court. Appellee contends, by appropriate cross-assignments, that while the trial court was without authority to render the judgment for actual damages other than the amount found by the jury, still the case should not be reversed because of this error, for it is the duty of this court to render the judgment that should have been rendered by the trial court. Appellee also contends that appellant cannot complain of the amount rendered, for the reason that it is less than the amount found by the jury.

As the case was tried to a jury and the question of the amount of actual damages, if any, suffered by appellee was a disputed issue of fact, it was manifestly error for the court to make its own finding of fact, on this disputed issue, a basis for judgment; its only power in such a case is, either to enter judgment on the finding of the jury, or to set such finding aside and grant a new trial. Article 2209, Rev. St. 1925; Ketchum v. Boggs (Tex. Civ. App.) 194 S. W. 201; Henne & Meyer v. Moultrie, 97 Tex. 216, 77 S. W. 607; West-side Oil Co. v. McDorman (Tex. Civ. App.) 244 S. W. 167; Crawford v. Wellington Rr. Committee (Tex. Civ. App.) 174 S. W. 1004; Postal Teleg. Cable Co. v. De Krekko (Tex. Civ. App.) 179 S. W. 525; H. & T. C. R. Co. v. Walsh (Tex. Civ. App.) 183 S. W. 18; Knox v. Brown (Tex. Com. App.) 277 S. W. 91; Reese v. Reese (Tex. Civ. App.) 289 S. W. 1023.

We have carefully examined the evidence on actual damages, and agree with the trial court that the evidence is insufficient to support a finding on the matter of actual damages in the amount found by the jury, for which reason this court cannot enter judgment for the amount of actual damages found by the jury. We have accepted the finding of the jury to the effect that appellant guaranteed that appellee would realize $2,500 out of his contract, though there is serious doubt as to the sufficiency of the evidence to sustain this finding. It was clearly the duty of the trial court, under the circumstances, to have set aside the finding of the jury on the amount of actual damages, and to have granted a new trial. It necessarily follows that this case must be reversed and remanded.

Reversed and remanded.