FRISKE v. GRAHAM, District Judge, et al.
No. 13586.

Court of Civil Appeals of Texas.
San Antonio.

May 3, 1939.

Mandamus proceeding by Josephine Friske against Honorable James S. Graham, District Judge, and others, wherein Roy R. Stevenson and another filed cross-petition.

Cross-petition for mandamus denied, and writ of mandamus as prayed for by relator granted.

Carter & Stiernberg, of Harlingen, for relator.

Seabury, Taylor & Wagner, of Brownsville, for respondents.

SMITH, Chief Justice.

The motion is in the form of petition for writ of mandamus, to require Honorable James S. Graham, judge of the 103rd Judicial District in and for Cameron County, to render judgment for relator, as plaintiff below, upon the findings of a jury returned, accepted and filed in the trial court.

The suit was brought by relator, Mrs. Friske, against Roy R. Stevenson and Ismiel Montalvo, to recover damages for the wrongful death of her husband, which resulted from a collision between a "Chevrolet coupe" driven by the decedent and a motor truck owned by Stevenson and driven by Montalvo.

It is conceded that on the occasion of the collision the two vehicles were approaching each other from opposite directions along a highway; that the decedent turned his car to cross the highway to his left, and

that in making the turn his car was struck by the approaching truck. As a result of injuries he received in the collision Friske died three days later. His widow brought this suit.

After the usual instruction and definitions the trial judge submitted the case to a jury upon special issues, in response to which the jury found, in substance, that—

1. Defendant was driving at a speed of more than 25 miles per hour,

2. which was a proximate cause of the collision.

3. Defendant failed to apply the brakes after decedent started to make a left turn across the highway,

4. which was negligence,

5. but not a proximate cause of the collision.

5a. Defendant was driving at 43 miles per hour,

6. which was such a rate as to endanger life and limb of persons traveling on said highway at the time and place of the collision.

6a. It was at such rate of speed as to endanger life and limb of persons traveling along said highway,

7. which was the proximate cause of the collision.

8. Decedent was in a perilous position immediately before the collision.

9. Defendant discovered such perilous position in time, by the use of all the means at his command, consistent with his own safety and the safety of his passengers and truck, to avoid the collision.

10. After discovering decedent's perilous position defendant failed to use ordinary care in the use of the means at his command, consistent with his own safety and the safety of his passengers and truck, to avoid said collision.

11. Such failure was a proximate cause of the collision.

12. Decedent turned his car to the left at such time "that there was not sufficient space between the said truck and the decedent's car for said movement to be made in safety,"

13a. which was a proximate cause of the collision.

14. When he turned his car to the left decedent failed "to give any audible or visible signal to defendant, Montalvo, who was operating the approaching truck, of (decedent's) intention to so change the course of his car."

15a. Such failure was not a proximate cause of the collision.

16. Fixing plaintiff's damages at $3000.

A transcript of the record accompanying the petition for mandamus shows that after first retiring for deliberation the jury brought in a verdict, including answers to all the issues submitted to them; the trial judge, upon inspecting the verdict, concluded that there were conflicts between some of the answers, which he pointed out to the jury, and, refusing to receive the verdict, directed the jury to again retire and consider the charge and reconcile the indicated conflicts. After so retiring, and upon further consideration, the jury again brought in a verdict in which they had changed their answers to some of the issues, but again the judge refused to receive the verdict, after inspecting it and concluding there were conflicts between some of the answers, which he pointed out to the jury, and required them to again retire and further consider the charge and issues. In pursuance of those instructions the jury, for the third time, retired and afterwards returned their verdict, as above set out, which the judge received, and ordered filed as the verdict in the case. The jury was then discharged.

Upon the filing of the verdict relator filed motion for judgment in her favor upon the verdict finally returned. The defendants below filed motion for judgment upon the verdict first brought in by the jury, and rejected by the court. Defendants also prayed that the court disregard some of the findings finally returned against them, upon the ground that such findings were not supported by reason or evidence, and prayed for judgment upon other remaining findings. Neither party moved for new trial, as in case of Missouri, Kansas, Texas R. Co., v. Brewster, 124 Tex. 244, 78 S.W.2d 575.

The trial judge denied said motions of both parties for judgment, and upon his own motion declared a mistrial by the following order:

"On this, the 11th day of February, A. D. 1939, came on regularly to be heard, pursuant to a previous regular setting thereof, the motion of the defendants, Ismiel Montalvo and Roy R. Stevenson, that judgment be rendered in their behalf on the findings of the jury and on the uncontradicted evi-

142

dence in the above entitled and numbered cause; and also came on regularly to be heard, pursuant to a previous regular setting thereof, the motion of the Plaintiff, Josephine Friske, a widow, that judgment be rendered in her behalf on the findings of the jury and their answers to special issues submitted to them in the above entitled and numbered cause; and the Court, after hearing said motions and argument of counsel for both plaintiff and defendants, is of the opinion that there is a conflict between the findings of the jury in answer to special issues Nos. 9, 10 and 11 on the one part and special issues Nos. 12 and 13a on the other part, and also that there is a conflict between the findings of the jury in answer to special issues Nos. 9, 10 and 11 on the one part, and special issues Nos. 3, 4 and 5 on the other part, and that neither plaintiff nor defendants are entitled to have judgment rendered for them in said cause:

"It is, therefore, ordered, adjudged and decreed by the Court that the motions of both plaintiff and defendants for judgment be, and the same hereby are, overruled, and that, solely because of the conflict in findings by the jury on the issues submitted, judgment be not rendered for the plaintiff in this case, and it is further ordered that judgment be not rendered for defendants in this case; and

"It is further ordered that the findings of said jury in said cause be set aside and a mistrial entered in said cause, and it is so ordered;

"To which action of the Court both plaintiff and defendants duly excepted.".

■ Defendants below, the individual respondents here, insist that the findings first tendered by the jury required the entry of judgment for them, since those findings they claim exonerated defendants from discovered peril, and convicted decedent of contributory negligence. Defendants in effect now insist that those original findings be given effect here, by mandamus requiring the trial judge to render judgment thereon for defendants. Defendants' contention is without merit for the obvious reason, even if none other exists, that those findings were never accepted or filed, and therefore never became the verdict of the jury. Being rejected by the trial judge, and never filed or entered in the minutes as a part of the record in the case, they were and are a nullity, and cannot be considered in this original proceeding for any

purpose. The same must be said of the second set of findings tendered by the jury and rejected by the judge. Both sets of findings were rejected by the court and afterwards superseded and substituted by other findings of the jury and therefore never became a part of the record in the case, except as they might have been incorporated in bills of exception, or by stipulation, for use in case of appeal. They can serve no purpose in this extraordinary original proceeding, and respondents' cross-petition for mandamus herein, insofar as based upon that contention, is without merit.

■ Respondents further contended in their motion below for judgment, that there was no evidence to sustain the findings against them on the issue of discovered peril, and that those findings should therefore have been disregarded by the trial judge and judgment rendered for respondents upon the sustained findings of contributory negligence of the decedent. This was not a motion for rendition of judgment non obstante veredicto, within the contemplation of Art. 2211, as amended by the Acts of 1931 (42d Leg. p. 119, Ch. 77, § 1), Vernon's Ann.Civ.St. art. 2211. That proceeding had some of the earmarks, but none of the essentials of the statutory proceeding for judgment non obstante veredicto. Hines v. Parks, 128 Tex. 289, 96 S.W.2d 970; Traders & General Ins. Co. v. Milliken, Tex.Civ.App., 110 S.W.2d 108.

■ Be that as it may, however, those contentions of respondents undoubtedly presented questions which called forth the judicial power and discretion of the trial judge in determining them. But the trial judge exercised and thereby exhausted that discretion by denying the motion which invoked it, and this Court is without power, through the writ of mandamus, invoked in an original proceeding, to revise that order, arrived at, as it was, in the discretion of the trial court. Gulf, C. & S. F. R. Co. v. Canty, 115 Tex. 537, 285 S.W. 296; Cortimeglia v. Davis, 116 Tex. 412, 292 S. W. 875.

■ As shown by his order, as well as otherwise in the record before us, the trial judge ordered a mistrial solely and wholly upon his conclusion of conflicts between the final jury findings. In the absence of any motion for new trial by either party, and by so basing his action solely upon what he assumed were conflicting findings, as well as by recitals in his order, and by

denying both parties' motions for judgment, the learned judge will be held to have necessarily overruled every objection made to the verdict returned and filed in the case, except the judge's own conclusion that there were irreconcilable conflicts in jury findings. If, therefore, it appears here that no such conflicts exist and the verdict as returned clearly authorized a verdict for relator, the entry of judgment thereon was a purely ministerial duty, and mandamus will lie to require entry of the appropriate judgment. Gulf, C. & S. F. R. Co. v. Canty, supra; Cortimeglia v. Davis, supra. We are therefore relegated to the controlling question of whether material and irreconcilable conflicts exist between the jury findings.

The trial judge concluded, first, that the jury's findings upon issues 9, 10 and 11 were in conflict with their findings upon issues 12 and 13a. In their answers to issues 9, 10 and 11 the jury found that defendant timely discovered the perilous position of decedent, but failed to exercise ordinary case to use the means at his command to avoid the collision, which was proximately caused by such failure. On the other hand, in their answers to issues 12 and 13a (with which the court found their answers to issues 9, 10 and 11 conflicted) the jury found that the decedent undertook the left turn across the highway without leaving sufficient space between defendant's truck and decedent's car "for said movement to be made in safety," and that that act was a proximate cause of the collision.

We are of the opinion that the two sets of findings do not present an irreconcilable conflict upon a material issue in the case, especially under the well established rule that apparent conflicts in jury findings should be reconciled, if reasonably possible under the record. 41 Tex.Jur. p. 1243, § 374; Speer's Special Issues, § 432.

The findings, in response to issues 12 and 13a, that a proximate cause of the collision was the conduct of decedent in turning his car across the highway at a time when "there was not sufficient space between" defendant's "truck and the decedent's car for said movement to be made in safety," does not, if given effect, nullify or destroy the further findings in response to issues 9, 10 and 11, that the collision and decedent's subsequent death were proximately caused by the defendant's negligent failure, after timely discovering the decedent's peril, to use the means at his hand to avoid the collision. The fact that the decedent moved into a place of danger, and thereby imperiled not only himself but his adversary as well, while it might relieve defendant of liability for specific acts of primary negligence, it would not relieve him of liability incurred under the doctrine of discovered peril, as is the case here. Under that humane doctrine the offending agency cannot justify its wrongful act by showing that the victim negligently placed himself in a position of peril. And so in this case the defendant may not escape liability for negligently injuring the decedent after discovery of his peril, by the finding that decedent contributed to his injury by getting into the perilous position. Dallas Ry. & Terminal Co. v. Bankston, Tex.Com.App., 51 S.W.2d 304.

The trial court further concluded that the findings of the jury, in response to issues 3, 4 and 5, that the negligent failure of defendant to apply the brakes on his truck after decedent "started" to turn across the highway was not a proximate cause of the collision, was in conflict with the further findings upon discovered peril, in response to issues 9, 10 and 11. We are of the opinion that a reasonable construction of those plain findings does not show the asserted conflict. The use of brakes is only one of several means of avoiding collisions between motor vehicles, and the finding that the negligent failure of defendant to apply his brakes here was not a proximate cause of the collision, cannot be enlarged into a finding that defendant had no other recourse to avoid the collision under the doctrine of discovered peril. Only such an omnibus finding, excluding every element of discovered peril, could be construed as in irreconcilable conflict with the findings in answer to issues 9, 10 and 11, upon the general issue of discovered peril. The findings in answer to issues 3, 4 and 5, that the failure of defendant to apply his brakes was not the proximate cause of the collision, had the effect of excluding only one of numerous independent elements of discovered peril, without impairing the general finding upon that issue. St. Louis B. & M. R. Co. v. Cole, Tex.Com. App., 14 S.W.2d 1024; Dallas Ry. & Terminal Co. v. Bankston, supra; Missouri, Kansas, Texas R. Co., v. Cunningham, 118 Tex. 607, 23 S.W.2d 343; Northern Texas Traction Co. v. Weed, Tex.Com.

App., 300 S.W. 41; St. Louis Southwestern R. Co. v. Inman, Tex.Com.App., 288 S.W. 150; Byerley v. Bauer, Tex.Civ.App., 99 S.W.2d 641; Miller v. Fields, Tex.Civ.App., 20 S.W.2d 137.

While the somewhat technical and vague doctrine of "mutual," or concurring, negligence, insofar as it is in derogation of the doctrine of discovered peril, may prevail in some of the States of the Union (11 C.J. pp. 280, et seq.; 4 Blashfield, Permanent Edition, § 2814), we know of no case in which it has been applied in Texas. On the contrary, it has been expressly repudiated in this State. Wilson v. Southern Traction Co., 111 Tex. 361, 234 S.W. 663, and numerous authorities there cited.

The issue of discovered peril is one peculiarly for the jury to determine from all the facts and circumstances in evidence, whether the injury results from a head-on collision, or otherwise. The evidence adduced below in this case is not before us now, and we cannot be concerned in it; but if it were before us, still we could not be concerned in it in this original proceeding. By submitting the issue of discovered peril to the jury, the trial court, after hearing the evidence, held it to be sufficient to raise that issue. That was the prerogative of the trial judge, and we cannot nullify his ruling thereon by holding in this proceeding that, as a matter of law, the issue of discovered peril did not arise below.

We perceive no irreconcilable conflicts between material findings of the jury. Those findings cover every material element of the case alleged. They convict the defendant below of various acts of specific negligence which are offset by findings of contributory negligence upon the part of the decedent, so that, but for the doctrine of discovered peril, the plaintiff below could not have recovered and defendant would have been entitled to judgment for its costs; whereas, in the presence of sufficient findings upon discovered peril, the plaintiff was entitled to judgment for her damages. The rendition and entry of such judgment became a ministerial duty, rather than a matter of discretion in the trial judge, and mandamus will lie to enforce the plaintiff's right thereto. Speer's Special Issues, §§ 431, et seq.; 41 Tex.Jur. pp. 1234, 1244, §§ 367, 376; 25 Tex.Jur. p. 484, § 104; Gulf, C. & S. F. R. Co. v. Canty, supra; Cortimeglia v. Davis, supra; Houston & T. C. Ry. Co. v.

Strycharski, 92 Tex. 1, 37 S.W. 415; Swann v. Wheeler, 126 Tex. 167, 86 S.W.2d 735, 737; Southland-Greyhound Lines v. Richardson, 126 Tex. 118, 86 S.W.2d 731; Carwile v. Cameron & Co., 102 Tex. 171, 114 S.W. 100; Townsend v. Young, Tex.Civ.App., 114 S.W.2d 296; Miller v. Stine, Tex.Civ.App., 99 S.W.2d 397; Dixie Service Co. v. Leaverton, Tex.Civ.App., 76 S.W.2d 530; Missouri, Kansas, Texas R. Co. v. Cheek, Tex.Civ.App., 18 S.W.2d 804; W. T. Raleigh Co. v. Sims, Tex.Civ.App., 108 S.W.2d 332; Allen v. Strode, Tex.Civ.App., 62 S.W.2d 289; Dallas Ry. & Terminal Co. v. Watkins, Tex.Civ.App., 89 S.W.2d 420; Keith Co. v. Minor, Tex.Civ.App., 103 S.W.2d 241; Perez v. Houston & T. C. R. Co., Tex.Civ.App., 5 S.W.2d 782.

Courts of Civil Appeals are empowered by statute to "issue the writ of mandamus to compel a Judge of the District or County Court to proceed to trial and judgment in a cause. * * *" Art. 1824, R.S.1925, as amended by Acts 1929 (41st Leg. p. 68, Ch. 33, § 1), Vernon's Ann.Civ.St. art. 1824.

The action of the trial court in this case, in refusing to render judgment for relator upon the verdict, amounted to a refusal to "proceed to trial and judgment" within the contemplation of Art. 1824. Cortimeglia v. Davis, supra; Southland-Greyhound Lines v. Richardson, supra.

And under that article this Court clearly and unquestionably has the power, and it is its duty, to require a trial judge to proceed to render judgment on the verdict where it appears, as in this case, that he mistakenly "refused to enter judgment on the verdict of the jury and declared a mistrial for the sole and only reason that the answers of the jury to the special issues are in irreconcilable conflict and will not support a judgment for defendant." Dallas Ry. & Terminal Co. v. Watkins, 126 Tex. 116, 86 S.W.2d 1081. Our Supreme Court has gone so far as to hold, generally, that "the Court of Civil Appeals has the power to issue the writ of mandamus, and such other writs ancillary thereto as may be necessary to protect the relator in every right he has under the law, * * *." Houtchens v. Mercer, 119 Tex. 244, 27 S.W.2d 795, 796.

Much is said in the individual respondents' briefs regarding errors alleged to have occurred in the proceedings leading up to the order of mistrial, particularly

in the form of the issues as submitted, and in the action of the court in rejecting the first and second verdicts. Such errors, if they exist, cannot be considered in this original proceeding here, but may be reviewed only on appeal to this Court. In determining the matter at hand we must take the issues as submitted, and the verdict actually received, filed and recorded. Errors occurring in the trial, such as in the admission or exclusion of testimony, or the sufficiency thereof; in the court's definitions and instructions, or in the form of the issues as submitted; in the conduct of court or jury in accomplishing a verdict, can be of no concern here in this proceeding.

For example, there was omitted from the ultimate issue of discovered peril the incidental or subsidiary question, or element, of whether respondents realized that the decedent might not, or could not, extricate himself from his perilous situation. If, under the case made, that incidental element could properly have been included in the issue, its omission was immaterial to the adjudication unless timely objected to by respondents. If in fact respondents did object to the omission, the court's ruling thereon would be subject to review on appeal, but certainly not in this proceeding. It may be, too, as for that matter, that the trial judge concluded from the evidence that it was unnecessary, or even improper, to include the omitted element in the submission, a ruling clearly within his discretion, subject to abuse, to be adjudicated on appeal. 25 Tex.Jur. p. 484, § 104; Missouri, Kansas, Texas R. Co. v. Cheek, Tex.Civ. App., 18 S.W.2d 804; Jeffers v. Dent, Tex. Civ.App., 280 S.W. 347; Allen v. Strode, Tex.Civ.App., 62 S.W.2d 289.

Nor could the trial judge consider those errors in passing upon the question of rendering judgment upon the verdict in its final form. He should have rendered judgment on the verdict, as provided in Art. 2209 (25 Tex.Jur. p. 484, § 104), and then, if finding that errors had occurred in the proceedings at any time before judgment, it would have been his duty to set aside that verdict and grant a new trial upon motion therefor of the aggrieved party, if any had been timely made. By that process the judicial powers of the court would be called forth.

"It is made the duty of the court to enter its judgment in conformity with the verdict whether it be correct or not, and whether the error in the verdict, if there be any, arose from erroneous instructions or rulings by the court or from a misinterpretation of the evidence by the jury. Claiborne v. Tanner's Heirs, 18 Tex. 68; Lloyd v. Brinck, 35 Tex. 1; Clark v. Pearce, 80 Tex. 146, 15 S.W. 787. The act of the judge in entering judgment upon the verdict is merely ministerial, and he cannot disregard the verdict, if it is responsive to the issue submitted, and in proper form." Houston & T. C. Ry. Co. v. Strycharski, 92 Tex. 1, 37 S.W. 415, 417.

Let the writ of mandamus issue as prayed for by relator, requiring respondent, the Honorable James S. Graham, District Judge, to render judgment, nunc pro tunc, in favor of relator against the defendants below, on the verdict of the jury, in the amount found by the jury. Respondents' cross-petition for mandamus is denied. The costs of this proceeding will be taxed equally against relator and the individual respondents.

SLATTON, J., concurs.

MURRAY, J., dissents.

SLATTON, Justice (concurring).

The writer concurs in the opinion of Mr. Chief Justice SMITH. The respondents, Stevenson and Montalvo, are not entitled to the writ of mandamus for the reasons stated, and for the further reason, that the answers made by the jury, as shown by the jury's first and second reports given to the trial court, presented conflicts upon material issues which nullify each other so that no proper judgment could be entered thereon for the defendants below, the respondents here. This is disclosed by the stipulation signed by the attorneys of record and the court, which accompanies the record before us. Said stipulation recites that the jury reported to the court, that a verdict had been reached, and upon reading the same in open court special issue No. 3, and special issue No. 9, had been answered "No"; all other answers were the same as above set out. Thereupon the trial court advised the jury (over the objection of respondents) that in his opinion the answers given to issues Nos. 3 and 4 were inconsistent and conflicting and retired the jury for further consideration of their verdict. Thereafter the jury returned into court with their verdict, which was the same as before, except the answer to special issue No. 3

146

had been changed from "No" to "Yes". Thereupon the trial court, at the suggestion of counsel of relator, advised the jury that in his opinion the answers of the jury to special issues Nos. 10 and 11 were inconsistent and in conflict with the answer of the jury to special issue No. 9, and retired the jury to further consider their verdict. Thereafter the jury returned into court their verdict, which was the same as the second report, except the answer of the jury to special issue No. 9 had been changed from "No" to "Yes."

The first report made by the jury contained inconsistent answers to special issues Nos. 3 and 4:

"Special Issue No. 3: Do you find from a preponderance of the evidence that the defendant, Ismiel Montalvo, at the time of the collision in question, failed to apply the brakes on said truck after John Friske started to make a left hand turn across the highway to go into the drive on the west side of the highway? Answer 'Yes' or 'No.' "

The jury answered "No" in their first report.

"If you have answered the last preceding question 'Yes' then answer the following:

"Special Issue No. 4: Do you find from a preponderance of the evidence that such failure, if any, on the part of Ismiel Montalvo to apply the brakes on said truck after John Friske started to make the left-hand turn across the highway, if you have so found, was negligence as that term has been defined to you? Answer 'Yes' or 'No.' "

The jury answered "Yes."

In addition to being inconsistent, the answers made by the jury were not responsive, as the court had charged the jury that "If you have answered the last preceding question 'Yes' (Special Issue No. 3), then answer the following (Special Issue No. 4):"

Moreover, the jury, in both the first and second reports, by their answers to special issues Nos. 8, 9, 10 and 11, found:

"Special Issue No. 8: Do you find from a preponderance of the evidence that John Friske immediately before the collision in question, was in a perilous position? Answer 'Yes' or 'No.'

"We, the jury answer: Yes.

"Special Issue No. 9: Do you find from a preponderance of the evidence that the defendant Montalvo on the occasion in question discovered the perilous position of said John Friske, if you have found that he was in a perilous position, in time, by the use of all the means at his command, consistent with his own safety and the safety of his passengers and truck, to avoid the collision? Answer 'Yes' or 'No.'

"We, the jury, answer: No.

"Special Issue No. 10: Do you find from a preponderance of the evidence that said Montalvo, at the time and place in question, after discovering the perilous position of John Friske, if he did discover it, failed to use ordinary care in the use of the means at his command consistent with his own safety and the safety of his passengers and truck, to avoid the collision and injuries to John Friske? Answer 'Yes' or 'No.'

"We, the jury, answer: Yes.

"If you have answered the last preceding question in the affirmative, then answer special issue No. 11.

"Special Issue No. 11: Do you find from a preponderance of the evidence that such failure on the part of Montalvo to use ordinary care in the use of the means at his command, consistent with his own safety and the safety of his passengers and truck, to avoid the collision and injuries to John Friske, if you have so found, was a proximate cause of the collision? Answer 'Yes' or 'No.'

"We, the jury, answer: Yes."

By the answer to special issue No. 8 Friske was found to be in a position of peril.

The answer of the jury to special issue No. 9, in the first and second reports, found that Montalvo did not discover the perilous position of Friske *in time,* etc.

However, by the answers of the jury to special issues Nos. 10 and 11, it is found, in effect, that Montalvo, after discovering the perilous position of Friske failed to use ordinary care by the use of the means at his command to avoid the collision and that such failure upon the part of Montalvo to use ordinary care after discovering Friske's perilous position was a proximate cause of the collision.

The finding of the jury by their answer to special issue No. 9, if not destroyed by their answers to special issues Nos. 10 and

11, would constitute a complete defense to the cause of action of relator upon the theory of discovered peril, but such finding has no more dignity than have the findings contained in special issues Nos. 10 and 11. The findings of the jury contained in special issues Nos. 10 and 11, construed in the light of appropriate definitions of "ordinary care" and "proximate cause" which were included in the charge, must mean that, but for the failure of Montalvo to use ordinary care, after he discovered the perilous position of Friske, the collision and the injuries would not have occurred. If these findings be true, then the finding contained in special issue No. 9 cannot be true; they nullify each other. Southwest Bitulithic Company v. Dickey, Tex.Civ. App., 28 S.W.2d 264; Texas Motor Coaches, Inc., v. Palmer et ux., Tex.Sup., 121 S.W.2d 323.

By other findings the jury had convicted the respondents of primary negligence, and that such negligence was a proximate cause. Likewise, the jury had convicted the relator's actor with contributory negligence, and that such contributory negligence was a proximate cause. Thus, the only theory of recovery remaining was that of discovered peril. The issues under that theory being destructive, as we have seen, the trial court could not properly render a judgment upon such a verdict, had the same been received by the court.

It has been ruled in this State that when a case is submitted to a jury upon special issues, and the jury by their answers make conflicting findings upon material issues, the trial court should point out the conflicts and retire the jury to further consider their verdict. Southern Underwriters v. Kelly, Tex.Civ.App., 110 S.W.2d 153. This must be true for the obvious reason that such a verdict cannot support a judgment. And hence, to not allow the trial court to refuse to accept such a verdict and retire the jury for further consideration, in order to allow the jury to arrive at a proper verdict, would be a judicial paradox.

MURRAY, Justice (dissenting).

I do not concur in either the majority opinion, written by Chief Justice SMITH, or the concurring opinion, written by Associate Justice SLATTON.

It is clear to my mind that the verdict upon which relator seeks a judgment by the extraordinary writ of mandamus shows on the face of the record to be a coerced verdict, and therefore not a valid verdict. The majority opinion states in effect that inasmuch as the first two verdicts were rejected by the court and a third verdict accepted by the court, those two verdicts are not a part of the record and cannot be here considered. This might be true if the attorney for relator had not seen fit to enter into a written stipulation with the attorney for respondents as to just what happened with reference to the rejecting of the first two verdicts and incorporating that written stipulation in the record he presents in connection with his application for mandamus. It seems that the attorney for relator wanted to put this Court on notice that the verdict upon which he was relying to secure this extraordinary relief was a coerced verdict and void, unless there was an irreconcilable conflict in the answers as given by the jury in the first two verdicts. It occurs to me that the matter could not be more clearly presented than by stipulation of the parties or their respective attorneys.

In the concurring opinion Justice Slatton contends that there was an irreconcilable conflict in the answers as given by the jury in the first two verdicts, and, of course, if this were true the trial judge properly refused to accept the first two verdicts. On the other hand, Art. 2205, R.C.S.1925, makes it the ministerial duty of the judge to accept a verdict when presented in open court, as was done in the case at bar, unless the verdict is informal or defective, in which event the court may direct it to be reformed at the bar or, if the verdict is not responsive to the issue submitted, the court may call the jury's attention thereto and send them back for further deliberation. Art. 2207, R.C.S. 1925.

The provisions of Art. 2207, supra, have been very properly construed to authorize the court to send the jury back for further deliberation, also when the trial judge discovers an irreconcilable conflict in the answers.

Let us see if there was an irreconcilable conflict in the answers of the jury in either their first or second verdict. When the jury returned their first verdict into court the judge refused to accept the verdict, but instructed the jury, in effect, to retire and reconcile a conflict between their answers to issues Nos. 3 and 4. These two issues are copied in full in Justice Slatton's

concurring opinion, and will not be here set out. By referring to these two issues it will be seen that the jury, in their first verdict, found, in answer to issue No. 3, that Ismiel Montalvo, the driver of defendant's truck, did not fail to apply the brakes, and in answer to issue No. 4, that if Montalvo did fail to apply his brakes it would have been negligence. The jury were instructed not to answer issue No. 4, if they answered issue No. 3, "No." Notwithstanding this instruction, the jury answered issue No. 4; therefore, the court should have ignored the answer to issue No. 4. Furthermore, issue No. 4, being asked conditionally, that is containing the terms, "if any," and "if you have so found," their answer "yes" to this issue was meaningless, inasmuch as they had previously found there was no failure.

As was said by Judge Smedley of the Texas Commission of Appeals, in Traders & General Ins. Co. v. Ross, 117 S.W.2d 423, 425, quoting: "Special Issue No. 10 should not have been answered at all, as the jury was told to answer it only in the event that it answered Special Issue No. 9 in the affirmative. But as answered this issue means nothing more than that the jury found that if there was any partial incapacity it was not permanent. It is not to be taken as a finding that there was in fact partial incapacity. Issue No. 11 should not have been answered. The jury was instructed to answer it if it answered Issue No. 10 'no' but, as above shown, it should have given no answer to issue No. 10, because it had answered Issue No. 9 'no.' And like the answer to Issue No. 10, the answer to Issue No. 11 cannot be considered a finding that there was partial incapacity, because the answer, in view of the form of the issue, means that the jury finds that if there was any partial incapacity it continued for 300 weeks. We think, therefore, that there is no finding of partial incapacity and consequently no conflict with the finding of total incapacity of 300 weeks on which the judgment was based."

See also Speer's Law of Special Issues, p. 573, § 444.

Thus it is seen that the trial judge was clearly wrong in concluding that there was an irreconcilable conflict between special issues Nos. 3 and 4, and in refusing to perform his ministerial duty of accepting the verdict.

If the first verdict had been accepted by the trial judge it would have supported a judgment for the defendants, as it would have been a finding of negligence on the part of the defendants, contributory negligence on the part of plaintiff, and a finding against plaintiff on his plea of discovered peril.

Likewise, when the verdict was returned the second time, there was no irreconcilable conflict and the verdict should have been accepted by the court and judgment entered for the defendants. The court refused to receive this verdict, but suggested to the jury that there was a conflict between their answers to special issues Nos. 9, 10, and 11. The jury then retired and changed their answer to special issue No. 9, from "No" to "Yes," and this time their verdict was received.

The trial court was mistaken in believing there was a material conflict between the answers to special issues Nos. 9, 10 and 11.

By their answer to issue No. 9, the jury found that Montalvo did not discover the perilous position of plaintiff's husband, John Friske, in time, by the use of the means at his command, etc., to have avoided the collision. The jury answered special issue No. 10, "Yes," but in view of the conditional form of the issue (paraphrasing the language of Judge Smedley quoted above), as answered this issue means nothing more than that if Montalvo did discover the perilous position of John Friske in time, etc., then and in that event he did not use ordinary care, etc., to have avoided the collision, which finding, of course, is meaningless, in view of the jury finding that he did not make any such discovery.

The jury answered special issue No. 11, "Yes," but (again paraphrasing the language of Judge Smedley), in view of the conditional form of this issue the jury's answer to this issue meant nothing more than if Montalvo did discover the perilous position of Friske in time, etc., and if he did fail after such discovery to use the means at his command, etc., to avoid the collision, then, and in those events, such failure would have been a proximate cause of the collision. This finding was meaningless and did not conflict with issues No. 9 or 10.

Thus the jury having been twice sent back to further consider their verdict, with a positive instruction that their answers were in conflict, which instructions were erroneous and given over the objection of the defendant, the third verdict became a coerced verdict at the hands of the judge,

and therefore an invalid verdict and one upon which a judgment could not properly be based. Fort Worth & Denver City R. Co. v. Lowrie, Tex.Civ.App., 271 S.W. 263; Davis v. Davis, Tex.Civ.App., 237 S.W. 619.

It is my opinion that if either application for mandamus should be granted herein, it should be the mandamus applied for by respondents in their cross-action. It is no more the ministerial duty of a court to enter judgment on a valid verdict than it is to receive a valid verdict when it is presented to him in open court and in the manner provided for in Art. 2205, supra.

I therefore respectfully dissent to the majority and concurring opinions.