Spurgeon E. Bell, State's Atty., of Austin, for the State.

DAVIDSON, Judge.

Cattle theft is the offense; the punishment, two years in the state penitentiary.

The record is before us without a statement of facts. An affidavit of appellant's counsel appears, by which an issue is raised as to whether or not the failure to obtain a statement of facts was chargeable to the appellant. In the light of the disposition of the case, it becomes unnecessary to determine this issue.

Bill of Exception No. 3 reads as follows:

"Be it remembered that upon the trial of the above entitled and numbered cause, the court in its written charge delivered to the jury, failed to charge all the law applicable to and demanded by the facts in evidence in that the evidence fairly raises the issue as to the possession of the said animal at the time of the alleged taking; and the said charge of the court wholly failed to submit the issue as to whether the possession of said animal was in the said S. Brown or Charlie Holbretch at the time of the alleged taking; and the defendant before the court's charge was read to the jury presented his objections in writing there to as follows: '–3. Because said charge wholly fails to present defendant's affirmative defense that the animal alledged to have been stolen was not taken from the possession of S. Brown as alleged in the indictment.'

"And the court after considering said objection overruled the same, to which action and ruling of the court defendant then and there excepted, and tenders this bill of exceptions, and asks that the same be signed and filed as a part of the record in this cause."

This bill of exception is approved by the trial judge without qualification. Such approval constitutes a certificate by the trial judge that, upon the trial of this case, he failed, over the proper and timely objections of the appellant, to submit an affirmative defense arising under the facts in evidence.

It is now deemed axiomatic that the trial court's failure, over a proper exception, to submit to the jury an affirmative defense arising under the facts constitutes reversible error.

Under such a certificate, it remains for this court to do that which the trial judge should have done under the circumstances, namely: award appellant a new trial. See: Hart v. State, 135 Tex.Cr.R. 565, 122 S.W.2d 193; and authorities to the same effect collated in 13 Texas Digest, ▪ 1111 (4).

The judgment of the trial court is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

---

**WHITE et al. v. MUNSON et al.**

No. 11410.

Court of Civil Appeals of Texas. Galveston.

April 2, 1942.

Rehearing Denied May 14, 1942.

Carter & Stiernberg, of Harlingen, Wm. A. Cline, of Wharton, and R. F. Peden, Jr., of Bay City, for relators.

M. S. Munson, District Judge, answered pro se.

Wood, Morrow, Gresham & McCorquodale, and M. S. McCorquodale, all of Houston, for respondent Phoenix Dairy.

GRAVES, Justice.

In this original application for a writ of mandamus, brought here pursuant to R.S. Article 1824, Vernon's Ann.Civ.St. art. 1824, and Rule 383, Texas Rules of Civil Procedure, relators seek to compel the Twenty-Third District Court of Matagorda County, Texas, and the Hon. M. S. Munson, as the Judge thereof, to set aside an order of that court in cause No. 13,283 upon its docket, styled Vera White et al. v. Phoenix Dairy, entered January 17, 1942, setting aside a jury's verdict therein, after a trial on the facts, and declaring a mistrial, upon a holding that "there was an irreconcilable conflict between findings of the jury on the issues of emergency and negligence on the part of the defendant's drivers of the second and third trucks", and to proceed to further trial and a judgment therein.

The learned trial Judge, in an obliging answer to the petition for the writ, to which the Phoenix Dairy, as the defendant below, had also been made a party, thus more fully states the substance of that holding:

"(1st) The jury in answer to Special Issues 1, 2 and 3 found that Janssen, the driver of defendant's (second) truck, failed to keep a proper lookout; that such failure was negligence, and such negligence was a proximate cause of the collision.

"(2nd) That Janssen operated said truck at a speed greater than was reasonable and prudent, under all the conditions then and there existing along said highway, and that such act was a proximate cause of the collision.

"(3rd) That Janssen drove defendant's truck so close behind defendant's first truck that it created a dangerous situation, and' that same constituted negligence, and such negligence was a proximate cause of the collision.

"(4th) That Pasak, the driver of one of defendant's trucks (third), drove so close behind defendant's second truck that it created a dangerous situation; that such

act was negligence and a proximate cause of the collision.

"(5th) That Pasak operated defendant's third truck at a greater speed than was reasonable and prudent, under all of the conditions existing then and there along said highway, and that same was a proximate cause of the collision.

"(6th) That in answer to Special Issue No. 55, the jury found that Janssen, the driver of one of defendant's trucks, acted under an emergency. In connection with the issue on emergency, that word 'emergency' was defined to mean a condition arising suddenly and unexpectedly and not proximately caused by the negligent act or acts of said Janssen.

"(7th) In answering Special Issues Nos. 57 and 58, the jury found that Pasak was in an emergency, and that said emergency was not caused by the negligence of Pasak.

"The Court held that the effect of the findings of the jury in answer to Special Issues 1–3, inclusive, 11–14, inclusive, and 24–28, inclusive, was to find that the defendant's drivers Janssen and Pasak were guilty of negligence, which proximately caused the collision; and, in answer to Special Issues 55–58, inclusive, that Janssen and Pasak found themselves in an emergency, without negligence on their part, presented an irreconcilable conflict in the answers of the jury; and the Court exercised his judicial discretion in so determining, and in overruling plaintiffs' motion to enter judgment, in declaring a mis-trial, and continuing said cause until the next regular term of Court."

This Court, after consideration of the petition, the answers thereto of both respondents, and the written and oral arguments of each, a full hearing from both sides in open court having also been had on March 26, of 1942, is clearly of the opinion that the facts stated in the petition entitled relators to a measure of the relief sought, and that the challenged order was an improvident one, on two counts:

(1) There was intrinsically no mutually-destructive repugnance between such two sets of findings, under the indispensable legal elements of an applicable emergency, as laid down by our Supreme Court in Beck v. Browning, 129 Tex. 7, 101 S.W.2d 545; see also Alamo Iron Works v. Prado, Tex. Civ.App., 220 S.W. 282; Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., Vol. 4, § 2163, Vol. 1, § 669;

Hooks v. Orton, Tex.Civ.App., 30 S.W.2d 681.

(2) The particular issues submitted and the responsive findings upon a declared-upon emergency in this instance, under the pleadings and the undisputed evidence relating thereto, were immaterial anyway. Younger Bros. v. Ross, Tex.Civ.App., 151 S.W.2d 621, writ of error dismissed; Texas & N. O. Ry. v. Harris, Tex.Civ.App., 101 S.W.2d 640; Brokaw v. Collett, Tex. Com.App., 1 S.W.2d 1090; Levin v. International-Great Northern R. Co., Tex.Civ. App., 45 S.W.2d 435.

This case reflected an automobile-collision that occurred on the highway between a north-bound car, being driven by relators' deceased husband and father, Earl White, and two out of three south-bound trucks of the respondent, Phoenix Dairy, being driven by its respective employees, the first one by Bell, the second by Janssen, and the third one by Pasak; with the cars of both sides to the accident so moving in opposite directions, those of the Dairy following each other in a line and not far apart, the jury found, as recited in the quoted answer of the respondent trial judge, the Dairy guilty of the five separate acts of primary negligence proximately causing the death of White as therein listed, three committed by its second driver, Janssen, and two by its third driver, Pasak, its first, Bell, by the undisputed showing, having passed by and missed White's car altogether; it thus appearing that Bell had missed White, as indicated, but that Janssen's truck had hit White's car in a sideswipe, knocking it around, and that Pasak's truck had hit White squarely, which resulted in the latter's death.

Inevitably, it would seem that, when Janssen so negligently sideswiped White, that created a practical emergency for Pasak, who was so close behind him as to create the dangerous situation so found to have attended the action of each of them in succession; in other words, accepting these findings as reflecting the facts, the inference appears to be inescapable that the respondent Dairy, through its second driver, Janssen, itself brought into being in that way the emergency that so arose for Pasak; at any rate, there is no finding of the jury to the contrary.

On the other hand, the precise findings under issues 55 and 57 of the separate emergencies these respective drivers were

found to have acted under, were that each, successively, had so been confronted with "a condition arising suddenly * * * not proximately caused by the negligent act of himself"; in other words, it was simply found, in each instance, that these two drivers acted under an emergency, or a condition of sudden peril or panic not brought about by his own negligence, but it neither found that the deceased White's negligence had brought about or in anyway caused such panic to either of them, nor that the panic of either had not been brought about, contributed to, or participated in, by the respondent Phoenix Dairy, through the separate acts of anyone of its three drivers, or through those of them all jointly.

Wherefore, it is thought, the two sets of findings, thus running along parallel lines, instead of being repugnant to each other, may be readily reconciled. If so, that should be done, rather than to strike them down. Friske v. Graham, Judge, Tex.Civ. App., 128 S.W.2d 139; Townsend v. Young, Judge, Tex.Civ.App., 114 S.W.2d 296; Shell Oil Co. v. Dennison, Judge, Tex.Civ.App., 132 S.W.2d 609, 611; Chaffin v. Drane, Judge, Tex.Civ.App., 131 S. W.2d 672; Ben E. Keith Co. v. Minor, Tex.Civ.App., 103 S.W.2d 241.

█ In these undisputed facts, under the decision of our Supreme Court in Beck v. Browning, 129 Tex. 7, 101 S.W.2d 545, supra, the respondent Dairy is not to be exonerated from the five acts of primary negligence so found against it simply because its employees, Janssen and Pasak, who between them committed those specific acts, each acted under a special situation not brought about by his own negligence; especially so, when the jury did not find that the sudden situation to either of them had been brought about by White, nor did it find that it had not been caused by, contributed to, or concurred in by the acts of one or the other of themselves, or by those of their fellow-employee, Bell, while all were so separately or together pursuing the course of their common employer's business, respondent Dairy.

█ In short, the law upon the defensive doctrine of emergency as declared by the Supreme Court in the Beck case may, by the paraphrase appearing in the relator's brief, thus be applied here:

"The principles governing liability in cases of sudden peril are:

"(1) The peril or alarm must be caused by the negligence of the defendant (meaning the opposite party, to-wit, the deceased White);

"(2) The apprehension of peril, from the standpoint of the injured person, (the party seeking to excuse his primary negligence) must have been reasonable;

"(3) The appearance of danger must have been so imminent as to leave no time for deliberation; and,

"(4) In cases where the evidence raises an issue of negligence on the part of plaintiff (in this case on the part of the Phoenix Dairy, the party seeking to excuse its own negligence on the ground of emergency), the negligence of plaintiff (in this case the Phoenix Dairy, the party claiming the benefit of the emergency) must not have concurred in bringing about a situation of peril, or contributed in creating the startled, dazed, or confused condition of the plaintiff's mind (in this case Janssen's and Pasak's minds)."

In other words, since there were no jury findings to the effect that the peril or alarm suffered by either of the Dairy Company's employees had been caused by the opposite party, White, nor that its own negligence, either through its first, second, or third drivers, did not at least contribute to the confused condition of either Janssen or Pasak, there is no resulting conflict in the verdict.

█ It is thought to further follow as a corollary that, the issues of primary negligence and discovered peril being shown to have been submitted in this case, together with correct definitions of negligence and ordinary care, as was done in Younger v. Ross, supra, the issues of alleged emergency became immaterial—that is, they need not have been submitted, since findings upon them in the defective form submitted could not have supported a judgment. Speer's Law of Special Issues in Texas, Sections 435 and 447; Cortimeglia v. Davis, 116 Tex. 412, 292 S.W. 875.

█ These conclusions require the granting of the prayed-for writ to the extent that the trial court is directed to set aside its order declaring a mis-trial, to reinstate the jury's verdict, and to proceed to a further trial and to a judgment in such case.

Mandamus granted.