SOUTHERN PAC. CO. v. ECKENFELS.
(No. 7420.)

(Court of Civil Appeals of Texas. Galveston. June 7, 1917. Rehearing Denied Oct. 4, 1917.)

1. MASTER AND SERVANT ⬷276(3)—ACTIONS FOR INJURIES—SUFFICIENCY OF EVIDENCE.

In an action by a steamship employé for injuries claimed to have been sustained by falling from an insecurely fastened ladder in the hold of the steamship, evidence as to whether the accident was so caused *held* sufficient to support a verdict for plaintiff.

2. NEGLIGENCE ⬷141(12) — INSTRUCTIONS — COMPARATIVE NEGLIGENCE.

Under the Employers' Liability Act (Acts 33d Leg. c. 179), providing that in an action for personal injuries sustained by an employé it shall not be defense that the employé was guilty of contributory negligence, but that the damages shall be diminished in proportion to the amount of negligence attributable to him, where facts were admitted showing that defendant was within the purview of such statute, an instruction that if the jury found for plaintiff, but also found that he was guilty of contributory negligence proximately causing or contributing to his injury, the jury must diminish his damages in the proportion such negligence bore to the entire negligence of defendant was correct.

3. APPEAL AND ERROR ⬷1068(4)—HARMLESS ERROR—INSTRUCTIONS—CURE BY VERDICT.

Where the court correctly instructed the jury to diminish the damages if an employé suing for injuries was guilty of contributory negligence and to specify the amount of such diminution in their verdict and the jury found for the employé without diminishing the damages, the error in also charging that if plaintiff could have avoided the injuries by the exercise of ordinary care the jury should return a verdict for defendant was harmless.

4. APPEAL AND ERROR ⬷882(12)—RIGHT TO ALLEGE ERROR—INVITED ERROR.

In an employé's action for injuries the employer may not complain of an instruction requested by it, directing the jury to find for it if the employé was negligent, another instruction having told the jury to diminish the damages if the employé was negligent.

5. DAMAGES ⬷132(1)—EXCESSIVE DAMAGES— PERSONAL INJURY.

A steamship employé in good health and earning $70 a month was injured by falling from a ladder, striking his face on some iron pipe. He was in the hospital for two weeks, in bed for six weeks, and it was two months before he was able to go out. His left side was paralyzed for three months. For six weeks he suffered pain in his nose and face, and obtained sleep by hypodermic injections. He had to use a cane for several months, and it was a year before he was able to work. He had two operations, both of which were painful and confined him to his bed. At the time of the trial he was not able to breathe through both nostrils, and he was permanently injured and disfigured. *Held*, that a verdict for $6,000 was not excessive, and did not indicate passion, prejudice, or sympathy.

6. EVIDENCE ⬷359(2) — PHOTOGRAPHS—AD- MISSIBILITY TO SHOW EXTENT OF INJURY.

In an action for injuries in which a physician testified that an operation made plaintiff "infinitely better," a photograph, taken after the injury and before the operation, was admissible to show the extent of his injuries.

7. DAMAGES ⬷168(2) — ADMISSIBILITY OF EVIDENCE—PERSONAL INJURIES.

In an action for injuries, evidence that the purpose of an operation performed on plaintiff was to restore the dividing plane between the two sides of his nose as nearly as possible to its original condition and by doing so permit air to pass through, and the nose on the outside to resume its normal position, was admissible and competent on the question of the nature and extent of plaintiff's injuries and the pain and suffering endured by him.

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

---

⬷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by Henry Eckenfels against the Southern Pacific Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and W. T. Armstrong and Eugene A. Wilson, both of Galveston, for appellant. Frank S. Anderson, of Galveston, for appellee.

GRAVES, J. This appeal is from a $6,000 judgment, upon a jury's verdict, in favor of appellee and against appellant, whose employé he was when injured; the amount was awarded for damages alleged to have been sustained as a result of his falling from an insecurely fastened ladder in the hold of the steamship El Sol, owned by appellant. It was alleged that appellant was within the purview of the Texas Employers' Liability Act, and was not insured under its provisions.

The first assignment of error contends that the verdict in favor of appellee is contrary to the obvious weight of the evidence, which is such that ordinary minds would be led to but one conclusion, which is opposite to that found by the jury.

The testimony of appellee himself as to how he was injured is practically undisputed, as no one else was present, or saw the accident.

[1] It was conceded by all the witnesses called by appellant that the ladder was loose at the bottom, and in that respect they corroborated appellee and all of his witnesses; there was some conflict in the testimony as to the distance the ladder would swing at the bottom, but all agreed that it was loose at the bottom, and one of the witnesses for appellee testified that its only fastening was by one bolt at the top.

Appellee testified that, under orders from his superiors, he went into the hold of the ship as described by him for the purpose of obtaining a tag, and that he did obtain it, and that it was in his pocket after he sustained his injuries, though the employés under whom he worked denied giving him such orders. Appellee further testified: ·

"After receiving those instructions from Mr. Picture and Mr. McGivney, I proceeded to go down and get the tag. I went down in the hold through the manhole; that is the only entrance to this hold. The descent is by means of a ladder, which was constructed straight up and down in a half circle. * * * When I got into the hold I was able to see sufficiently to find the tags. * * * That hatch cover (referring to the one on the upper 'tween-deck) wasn't off. The hatch cover was off on the lower 'tween-deck. There was about two foot of space each way between the foot of the ladder and the cargo, that is, around the front and the back. About the side there was about four inches of space from the stanchion on just one side. The other side was clear. That is, it wasn't up against anything, or nothing against it. This cargo of iron was piled about two feet from the bottom hold. I found the tag was right in the end of the pipe. * * * On going down this ladder, I did not observe anything as to whether it was loose or not. After I started up the ladder, I got to about the third rung from the top of the ladder that goes from the

shelf to the hold. She tilted, gave me a lurch, and threw me off. My face hit on the iron. I fell down in the bottom of the ship on the iron pipe, about 10 feet. I struck my face here, and my back and on my nose. I don't know how long I laid there; when I came to I was in a dazed condition. The first that I recall as to where I was I was on the lower 'tween-deck."

Opposing this direct statement by appellee as to how he was injured, appellant constructed and presented to the jury its theory that the accident could not have happened in that way, but must have resulted from his walking off of and falling directly from the orlop deck to the bottom of the ship, or upon the iron pipe stored there. It had an examination made of the ship and the ladder by its agents and officers, including its captain, almost immediately after appellee was hurt, and very fully developed, and offered evidence in substantiation of this theory upon the trial. At most it was but a theory, a mental conception of how the accident and injury may have occurred, and did not commend itself to the jury. They heard both sides from the mouths of witnesses who thoroughly examined the premises, so quickly after the injury that fresh blood was found on the floor of the vessel, on the iron pipe, and near the foot of the ladder.

Nor does the evidence offered by appellant in support of this theory, in our opinion, present any such situation as that ordinary minds could only reach an opposite conclusion to that arrived at by the jury. Upon the contrary, we think the jury's finding had ample support in the evidence, and the assignment is accordingly overruled. White v. Peters, 185 S. W. 659–661, and cases cited; Willingham v. Geitzenauer, 161 S. W. 376–378.

The second assignment of error contends that the court erred in its instructions to the jury, because the portions of the charge relating to contributory negligence were irreconcilable and confusing to the jury, furnishing them no proper and consistent guide and directions on the subject of contributory negligence.

In his general charge, after defining contributory negligence as a failure to use and exercise ordinary care, the court instructed the jury, in event they found for appellee, but also believed from the evidence that he was guilty of contributory negligence proximately causing, or contributing to his injury, they must diminish his damages in the proportion such negligence upon his part bore to the entire negligence, if any, of appellant, and directed that the amount of the diminution found be specified in the verdict. In addition, and at the request of appellant, he gave the following special charge:

"If you believe from the evidence that the plaintiff, by the exercise of ordinary care at the time he received his injuries, could have avoided falling, you will return a verdict for the defendants."

[2] Facts had been admitted upon the trial which showed that appellant was within the purview of chapter 179, Acts 33d Leg., known

as the Employers' Liability Act; and since contributory negligence, under the provisions of that act, was not a defense to appellee's cause of action, but it required that, in the event the jury found appellee guilty of contributory negligence, his damages should be diminished in proportion to the amount of negligence attributable to him, we think the general charge was correct.

[3, 4] While the special charge was error, we think, under the circumstances here shown, it was not only a harmless one, but was invited by appellant through its request that it be given, and that it is consequently in no position to complain.

If the jury were misled or confused by the charge, it could only have been so in the event they had first found appellee guilty of contributory negligence, in which case there might have been some misapprehension as to whether the verdict should be for appellant straight, or the damages diminished; but undoubtedly they did not find appellee guilty of contributory negligence, since they found a verdict for him, and did not diminish the damages, as directed by the court. It follows that this assignment is without merit.

[5] The verdict for $6,000 is complained of as excessive under the third assignment, the contention being that this award was so palpably unwarranted by the evidence as to indicate that the jury were actuated by passion, prejudice, or sympathy in according it. But after a careful review of the testimony, we have not only been unable to find any indication of such improper motive, but cannot say that the sum awarded was any more than just compensation for the injury shown. The following facts are practically undisputed: Prior to the accident appellee was earning $70 per month. He was in good health, and had never had any injury to his face or nose, which were then in normal condition. He was confined to the hospital for two weeks, and confined to his bed at home for about six weeks. It was two months after the injury before he was able to get around and get out. His left side was paralyzed for a period of about three months. For about six weeks he suffered pains in his nose and face continuously and was unable to sleep. He obtained sleep by hypodermic injections. After getting out, he used a cane for about five or six months, and it was one year after he was injured before he was able to work. He suffered pain during that time. Dr. Haden performed two operations on appellee's nose and face, the first of which took about

3½ hours to perform. The operations were painful. After the first operation, appellee was at the hospital about one week and was confined to his bed at home for about one week. After the second operation he was confined at home one week in bed. He suffered pain all of that time and while the operation was being performed. He was not at the time of the trial able to breathe through both nostrils, and was shown to be permanently injured and disfigured. The assignment cannot be sustained.

[6] By its fourth assignment of error appellant contends that the court erred in permitting the plaintiff to introduce a photograph of himself, taken after his injury and before he was operated on the first time, on the ground that it was immaterial and prejudicial. We think there was no error in admitting the photograph in evidence, and that it was competent for the purpose of showing the extent of the injuries to appellee's face and nose. He was present at the trial, and the jury had opportunity of observing the condition of his nose and face at that time, and if the operation performed by Dr. Haden had made him "infinitely better," as the doctor testified, the jury observed that fact, and his improved appearance might have had the effect of reducing the verdict instead of increasing it.

[7] Under its fifth and last assignment, appellant insists that the court erred in permitting Dr. Haden to testify as to the general nature of the first operation performed by him on appellee's nose, the question and answer being as follows:

"Q. You may state first, the purpose of the operation, and its general nature. A. The purpose of the operation was to restore this dividing plane between the two sides of the nose, as near as possible, to its original condition, and subsequently, by doing so, permit air to pass through, and the nose on the outside to resume its normal position. This was accomplished by a very severe and radical operation, not without danger."

While the last sentence was not properly responsive to nor called for by, the question, appellant made no motion to strike it out; the balance of the answer was unobjectionable, and we think was clearly admissible, and competent upon the question of the nature and extent of appellee's injuries and the pain and suffering endured by him.

We conclude that no error has been shown, and it is ordered that the judgment be affirmed.

Affirmed.