**ÆTNA LIFE INS. CO. v. CULVAHOUSE.**
**(No. 7265.)**

Court of Civil Appeals of Texas. Austin.
Nov. 5, 1928.

Rehearing Denied Nov. 21, 1928.

Joseph W. Hale, of Waco, for appellant.
Jenkins, Miller, & Wilson, of Brownwood, for appellee.

McCLENDON, C. J. Suit by Ætna Life Insurance Company against T. I. Culvahouse to set aside an award of the Industrial Accident Board, made to Culvahouse as an employé of Roxanna Petroleum Corporation. The appeal is from a judgment in favor of Culvahouse against the insurance company upon a special issue verdict.

The controlling question is whether Culvahouse was an employé of the Roxanna Corporation within the meaning of the Workmen's Compensation Act. We have concluded that the record establishes such relation as a matter of law, which holding renders immaterial questions relating to the charge of the court, the admissibility of certain evidence, and alleged improper argument of appellee's counsel. The other questions presented will be considered in the following order:

1. The right of appellant to open and close the argument in the trial court.

2. The right of appellee (a) under the statute, and (b) under the pleadings, to recover for medical, hospital, and doctor's bills.

3. The relation of appellee to the Roxanna Corporation under the Workmen's Compensation Act.

4. The effect of the jury findings regarding appellee's injuries, as being contradictory.

Appellant's asserted right to open and close the argument is predicated upon those provisions of section 5 of article 8307, R. S. 1925, which require the insurer within 20 days to bring suit to set aside the award; the contention being that, although the sec-

tion expressly provides for a trial de novo and places the burden of proof upon the party claiming compensation, still the burden of the whole case is upon the party bringing the suit, because it is necessary for such party to show the jurisdictional facts essential to maintenance of the action. Without determining whether this question would present merit in a case where jurisdictional facts were in issue, it certainly has no merit here, and is overruled because the parties entered· into a written stipulation whereby all jurisdictional facts were admitted, and appellee assumed the position of real plaintiff and the burden of establishing every fact essential to recovery.

 Recovery of medical, hospital, and doctor's bills is contested on two grounds:

1. Because the statute (section 7, art. 8306) gives the holder of such bills a right of action directly against the insurer. See Home Co. v. Cobb (Tex. Civ. App.) 220 S. W. 131. Prior to the 1917 amendment of section 7 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246k), it was held that, in the absence of contract between the insurer and holder of such bills, only the employé was bound, and he alone could recover against the insurer. Amended section 7 does not, however, take from the holder of such bills the right to hold the employé. In the present case the insurer denied liability, the bills were incurred by the employé and on his behalf, and he was personally liable therefor. The holders have made no demand on the insurer, and, since appellee is primarily liable for these items, he is entitled to recover them under section 7.

 Appellant further contends that, since there was no claim for these items before the Industrial Accident Board, they cannot be included in a suit to set aside the award. The scope of the inquiry in a suit to set aside the award of the board has been the subject of frequent adjudication, and, although the particular question here raised does not appear to have arisen, the uniform holding has been that, where the claim sought to be established in the suit to set aside the award is the same general claim as that asserted before the Accident Board, the action is maintainable with reference to every item or claim that could have been asserted before the Accident Board, or finding that such board could have made. The right to reimbursement for the bills in question was given by the statute as an incident to and as a part of the compensation which the act gives to the injured employé, and we think it was recoverable in the action to set aside the award, regardless of whether it was asserted before the Accident Board. In the present case it appears that a part at least of the bills had not accrued at the time the award was made. The following cases support in principle this holding: Georgia Cas-

ualty Co. v. Griesenbeck (Tex. Civ. App.) 210 S. W. 273; Ætna Ins. Co. v. Rodriguez (Tex. Civ. App.) 255 S. W. 446; Texas Employers' Ass'n v. Nunamaker (Tex. Civ. App.) 267 S. W. 749 (writ refused); Texas Employers' Ass'n v. Knouff (Tex. Civ. App.) 271 S. W. 633 (writ refused).

 The facts pertinent to the relation of Culvahouse to the Roxanna Company are without substantial dispute. The Roxanna Company was. engaged in developing certain oil leases in what was known as the Fry field in Brown county. It made a contract with one Caudle to drill certain wells for it, under which it furnished the drilling rig, casing, and pipe, and Caudle furnished the other machinery, the motive power, and the employés. Caudle was paid per foot; but, if unusual difficulties occurred beyond 1,400 feet, he was to receive $80 for a. day of 24 hours, and $40 for a day of 12 hours. Setting the casing was a part of Caudle's contract, and it was admitted that he was an independent contractor up to the time he completed the well under the contract. Appellee was a member of a "casing crew," known as "Johnnie's casing crew," that had been employed by Caudle to set the casing. After the well was drilled, the Roxanna Corporation desired the casing pulled, and employed and paid Johnnie's casing crew for the particular work required of a casing crew, and Caudle operated the drilling machinery for this operation on the same per diem basis provided in the drilling contract. There was no express agreement between the Roxanna Corporation and the casing crew, or its members; but it was admitted that the crew was employed and paid by the Roxanna Corporation under the recognized custom in that oil field, under which casing crews were paid $45 for pulling 8-inch casing and $40 for pulling 10-inch casing, provided the operation did not consume more than a day of 12· hours. If it exceeded that time, additional compensation according to a customary scale was paid. The crew consisted of a leader, manager, or "head man," who in this instance was Johnnie Culvahouse, who represented the crew in obtaining employment and furnished his automobile for transportation. The entire compensation coming to the crew was paid over to this leader, and he was entitled to deduct first 15 per cent. for his services as leader, and the balance was divided equally between the five members of the crew. The crew provided two tools, known as a "neverslip" and a "casing pole." Their work consisted in attaching the "neverslip" to the casing, unscrewing each joint as it was raised above the surface by the drill machinery, and then loading the disconnected joint on a wagon. This operation was ·repeated until all of the casing was pulled.· When this was done, it was customary to have a member of the casing crew tie back

the blocks, necessitating his climbing up on the rig. The work to be done by the casing crew was under the general direction of the driller, who in this instance was one Dutton, an employé of Caudle. Appellee's injuries were the result of a fall from the drilling rig while engaged in tying back the blocks under the direction or orders of Dutton. While the casing crew were paid by the Roxanna Corporation, they were not carried on its pay rolls.

Appellant contends appellee was not an employé of Roxanna Corporation, as a matter of law, or that that issue was one of fact, on one of the following theories: (1) That either Johnnie Culvahouse, as manager of the crew, or the entire crew collectively, was an independent contractor; or (2) that appellee was an employé of Caudle. A very able analysis of the subject of independent contractor and employé, and quite an extensive citation and review of the authorities, including the exhaustive notes in 19 A. L. R. pp. 1168–1361, and 20 A. L. R. pp. 684–808, will be found in Shannon v. Indemnity Co. (Tex. Com. App.) 257 S. W. 522. As there pointed out:

"The courts in nearly every instance have undertaken to determine the relation of the person employed by another by first deciding whether or not such person was an independent contractor."

This question being determined in the negative, the relation of employé becomes established, and vice versa.

■ The test most generally adopted as establishing the relation of independent contractor is:

"That he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished."

We will not discuss the various evidentiary elements which have given rise to such contrariety of view among the several courts of last resort, as bearing upon this essential test. The question here, we think, involves a comparatively simple application of this test. Whether Caudle was an independent contractor, as to his part in pulling the casing, we think unimportant. For present purposes it may be conceded that he was. But his contract did not cover the entire operation of pulling the casing. He only furnished the motive power, a portion of the machinery, and the employés other than the casing crew. The latter were employed and paid by Roxanna Corporation, and, unless they were independent contractors, they were employés of Roxanna Corporation, regardless of the relation the drilling foreman bore to the Roxanna Corporation, and regardless of whether they were carried on its pay rolls.

The work of the casing crew was not that of an independent occupation; it was merely that of manual labor covering a portion of an entire joint operation. It could not be performed independently of the other portions of the operation, and necessitated the immediate direction of some one in charge of the entire operation. The skill required consisted mainly in team work, and the tools furnished by the crew constituted a relatively small part of the appliances used. We do not think the evidence raises the issue of independent contractor. Spencer v. Marshall, 107 Kan. 264, 191 P. 468, seems directly in point.

■ Appellant's remaining contention is that the jury findings on the extent of appellee's injuries are contradictory, and therefore will not support the judgment. These findings are embodied in the following special issues and their appended answers:

"(2) Has the defendant, T. I. Culvahouse, been totally and permanently disabled by reason of the injuries complained of in this case? Answer this question Yes or No." Answer: "Yes."

"(3) For how many weeks, if at all, has the defendant, T. I. Culvahouse, been totally disabled by reason of the accident herein complained of?" Answer: "31 weeks."

"(4) For how many weeks, if any, will said defendant, T. I. Culvahouse, be totally disabled?" Answer: "No longer."

"(5) Has the defendant, T. I. Culvahouse, been partially and permanently disabled by reason of the accident herein complained of? Answer this question Yes or No." Answer: "Yes."

"(6) What was the average weekly wages of the defendant, T. I. Culvahouse, at the time he was injured?" Answer: "$45.00."

"(7) How much per week is or will the defendant, T. I. Culvahouse, be able to earn after he has recovered from his total disability, if he is or has been totally disabled, if he ever so recovers?" Answer: "$15.00."

"(19) (Requested by plaintiff.) For what number of weeks from August 2, 1927, was the defendant, T. I. Culvahouse, totally incapacitated for work as a result of the injuries complained of?" Answer: "31 weeks."

The particular point appellant makes is that the second finding, "totally and permanently disabled," is conflicting with the fifth finding, "partially and permanently disabled." If these findings stood alone, the point would present substantial merit. When all the findings are construed together, no substantial doubt arises as to the jury's meaning. By eliminating the second finding, it is clear that the jury found a total disability of 31 weeks and permanent partial disability thereafter, with an earning capacity reduced from $45 to $15 per week. With these clear findings it is equally manifest that, in answering the second issue, the jury separated the words "totally" and "permanently," finding each to exist independently. In other words, they found a "total" disability and a "permanent" disability, but not a total disability that was permanent. We do

not have to resort to conjecture or surmise to reach this conclusion. It seems to us not to admit of substantial doubt, or to require extended discussion to support it. The judgment follows this construction of the verdict.

The trial court's judgment is affirmed.

Affirmed.