## TRADERS & GENERAL INS. CO. v. WATKINS.

### No. 1765.

Court of Civil Appeals of Texas. Waco.

April 30, 1936.

Rehearing Denied May 28, 1936.

Jos. W. Hale, of Waco, and Lightfoot & Robertson, of Fort Worth, for appellant.

F. R. Valentine and W. L. Eason, both of Waco, for appellee.

ALEXANDER, Justice.

This is a workmen's compensation case. J. H. Baverly was the insurance subscriber and alleged employer, M. K. Watkins the employee, and Traders & General Insurance Company the insurance carrier. It was alleged that Watkins was employed by Baverly to haul some rock to be used in connection with a road construction job, and that while he was doing so the endgate of a wagon fell on his head, resulting in his total and permanent dis-

ability. The jury in answer to special issues found that on or about January 16, 1934, Watkins received an injury while engaged in the work he was performing in connection with the hauling of said rock, which injury resulted in his total and permanent disability; that at the time of his injury he was an employee and not an independent contractor; and that his average weekly wage was $20.18 per week. Judgment was entered for the employee, and the insurance company appealed.

■ Appellant's first major contention is that the evidence established as a matter of law that appellee was an independent contractor and not a servant of Baverly, the subscriber. There was evidence that Baverly employed Watkins and one Tremar and their trucks to haul the rock in question from one location to another for use in road construction work, and that he agreed to furnish an extra helper to each of said truck owners and to pay said truck owners $1 per cubic yard for hauling said rock. If this relationship had existed between the parties at the time Watkins was injured, there might have been some ground for appellant's contention; but both appellee and his wife testified that while the work was in progress under the aforementioned contract, appellee's truck broke down so that he could no longer use it in hauling the rock and that Baverly then employed appellee at 35 cents per hour as helper to assist Tremar in finishing the job. Appellee claimed that it was while he was working under this latter arrangement that he received his injury. This latter evidence was sufficient to authorize the jury to find that appellee was a servant of Baverly and not an independent contractor. Ætna Life Ins. Co. v. Culvahouse (Tex.Civ.App.) 10 S.W.(2d) 803; King v. Galloway (Tex.Com.App.) 284 S.W. 942; West Lumber Co. v. Smith (Tex.Civ.App.) 283 S.W. 1104, affirmed (Tex.Com.App.) 292 S.W. 1103; J. W. Zempter Const. Co. v. Rodgers (Tex.Civ.App.) 45 S.W.(2d) 763. In this connection we hold that there was no material error in the manner of submitting to the jury the issue of employee and independent contractor. These assignments of error are overruled.

■ Appellant contends that the court did not submit to the jury the issue as to whether appellee received his injury "in the course of his employment." That exact issue was not directly submitted to the jury, but the jury in answer to a properly submitted issue found that appellee "received an injury while engaged in the work he was performing in connection with the removing of the rock referred to in the testimony." There was no complaint of this method of submitting the issue and no request for a different submission. We think this constituted a sufficient submission of the issue of whether or not the employee received his injury in the course of his employment, and that in the absence of an objection by appellant to that manner of submission, the record does not present reversible error. Texas Employers' Ins. Ass'n v. Owen (Tex.Com.App.) 298 S.W. 542, par. 3.

■ With reference to the scale of wage to be applied, the appellee alleged as follows: "At the time plaintiff was injured, his wages were $3.50 a day, and he had been working at that time for said employer two days, and he had not worked in such employment the whole of a year, and that at the time he was injured his wages and salary were the same as the same class working substantially the whole of the year immediately preceding his injuries in the same or similar employment and in the same or neighboring place, and he shows that it would be just and fair to compute his wages at $3.50 a day, or $21.00 a week."

The court submitted the issue to the jury as follows:

"Special Issue No. 9: What do you find from the preponderance of the evidence to have been the average weekly wage received by the plaintiff, M. K. Watkins, at the time of his alleged injuries, if any?" To which the jury answered: "$20.18."

"In determining your answer to special issue No. 9, you may consider the following: The average annual wage shall consist of 300 times the average daily wage or salary which an employee of the same class, working substantially the whole immediately preceding year in the same or in a similar employment in the same or neighboring place shall have earned in such employment during the days when so employed, and the average weekly wage shall be 1/52nd of the average annual wage."

According to appellee's testimony, he was receiving 35 cents per hour at the time of his injury, but had been engaged in that employment only two days. There was

evidence that other employees who had been engaged in the same class of work substantially the whole of the immediately preceding year in similar employment in the same neighborhood had received $3.50 per day. The appellant by a single proposition challenges the sufficiency of the pleadings, evidence, and the manner of submitting the issue. We think the pleadings in the absence of an exception were sufficient to support a claim of right to recovery under section 1, first subdivision 2, of Revised Statutes, art. 8309, defining "average weekly wages," and that the evidence was sufficient to authorize the submission of that measure of recovery. The issue as submitted was not as appropriate as it should have been, but when it is read in the light of the evidence and the instruction given in connection therewith, we think it a sufficient submission of the wage scale provided for in subdivision 2 of the aforementioned statute and that the jury was not misled thereby. The appellant made no objection in the lower court as to the manner of submitting the issue and offered no suggestion as to the proper manner of submitting same, and is hardly in position to now complain of the form of the issue in this court for the first time. This assignment is overruled.

■ The court permitted appellant to introduce evidence as to the nature and extent of three other injuries previously received by appellee while working for other employers on other jobs and of the amount of compensation received by appellee in settlement thereof, but excluded copies of the claims filed with the Industrial Accident Board and copies of the petitions filed in court when suit was brought to recover compensation for said injuries. The appellant assigns the exclusion of this evidence as error. The evidence shows that the injury complained of in the case at bar was to the head, and resulted in pressure on the brain, requiring an operation on the skull, while the injuries previously received by appellee were to other portions of the body. There was no evidence tending to show that appellee had not fully recovered from the previous injuries at the time he received the injury here sued for, and there was no evidence that the previous injuries in any wise contributed to his present disability. There was no material error in excluding the proffered testimony.

■ One of the bills of exceptions shows that after the jury had been impaneled, but before the trial had begun, the court gave the jury some verbal instructions as to how they should conduct themselves during the trial of the case. The bill shows that, among other things, the trial court instructed the jury as follows:

"* * * It is not an uncommon thing at all that after we get through spending a week or two weeks here trying a case, that the jury goes out, and they are just as conscientious as they can be, but they bring in their verdict and the fellow that loses, of course, goes to looking around to see what he can find out, and to see if he can find some grounds upon which to set their verdict aside, and if he can't find out anything else, he will have the jury all summonsed back here as witnesses, and put them on the stand and ask them what they talked about up there in the jury room; asks them if they didn't talk about this, or if they didn't talk about that, and somebody will say something. Out of the twelve, you will find somebody that will begin to make excuses as to why he rendered his judgment so and so, and so and so.

"Now, the best thing and the wisest thing for a juror, after he makes up his verdict and reports it to the Court, and the Court receives it, is to say nothing about the matter to anybody. If anybody comes around talking to you about the case, and wanting to know why you did this, that, or the other, why, that is none of their business, and it will save you a lot of trouble and time if you will observe those matters. * * *"

The appellant objected to the giving of such instructions and requested the court to instruct the jury not to consider same, but the request was overruled. We do not approve of the giving of such instructions. They have a tendency to induce the jury to conceal misconduct, whereas, the court ought to encourage the jury to make a full disclosure of any irregularity or misconduct that occurs during the trial of a case. Revised Statutes, art. 2234. However, there is nothing to show that counsel for appellant made any effort after the trial was concluded to discover misconduct on the part of the jury, nor that any of the jurors refused to make a full disclosure of anything that occurred during the trial. Hence, the bill of exception shows no injury and therefore does not present reversible error.

'We have carefully considered all other assignments and have concluded that they do not present reversible error.

· The judgment of the trial court is affirmed.