### DALLAS RY. & TERMINAL CO. v. LATHAM.

No. 12896.

Court of Civil Appeals of Texas. Dallas.

Aug. 3, 1940.

Dissenting Opinion Oct. 23, 1940.

Rehearing Denied Oct. 26, 1940.

Burford, Ryburn, Hincks & Charlton and Logan Ford, all of Dallas, for appellant.

Shelby S. Cox, of Dallas, for appellee.

YOUNG, Justice.

Appellee's suit for personal injuries resulted in a jury verdict and judgment for $1,000. In our review of the record, the parties will be referred to as in the trial court, or by name. On the morning of May 26, 1938, plaintiff, Iva Latham, was a passenger on a local bus of defendant, which was proceeding south on Tyler Street in the Oak Cliff section of Dallas. She alleged that, at the intersection of Melba Street, the operator of the bus caused it to slow down suddenly and without warning, and to violently swerve aside from its course of travel, such movement being unusual and negligent; that, as a result, plaintiff was thrown from her seat to the floor and into the entrance well of the bus, sustaining certain injuries. To the merits of plaintiff's claims, the defendant denied that its bus operator was at fault in any respect, but that such injuries were caused by plaintiff's own failure to exercise ordinary care. The court's charge, among other instructions, properly defined "proximate cause", "new and independent cause", "sole proximate cause" and "unavoidable accident". The jury, from issues, determined the following facts: (1) That the operator of defendant's bus, at the time and on the occasion in question, suddenly and violently caused said bus to swerve from its course, which was negligence and a proximate cause of plaintiff's injuries; (2) that said injuries were not the result of an unavoidable accident; (3) that the operator of an automobile, which was driven off of Melba Street onto the Tyler Street intersection at the time, failed to drive to the rear of defendant's said bus, but this was not the sole proximate cause of plaintiff's injuries; (4) that the operator of the car, which subsequently collided with defendant's bus, did not fail to slow down as she approached the intersection of Tyler and Melba Streets on the occasion in question; (5) that the driver of the automobile, which subsequently collided with defendant's bus, did not approach the intersection at a

speed in excess of twenty miles per hour; (6) that the driver of said automobile did not fail to keep a proper lookout at the time. The sole proximate cause issues which followed each of the issues outlined in subdivisions 4, 5 and 6 above, were not answered by reason of the jury responses to preceding questions.

It is obvious from a study of appellant's brief and the testimony, that the Street Railway's main ground of non-liability is this: That there was no violent and unusual swerve of the bus, resulting in plaintiff's fall, but that her injuries were solely due to the impact of an automobile driven by a third party (Mrs. Barton), off of Melba Street into the left side of said bus, as it proceeded south on Tyler through the intersection. It should be noted that Melba Street runs east and west, crossing Tyler at a right angle. Mrs. Barton's car, at the time, approached and entered the intersection from the east, she intending to turn right on Tyler and away from the course of the southbound bus. The collision resulted, the right front of the Barton car being damaged and its bumper caught under the metal apron near the middle of the passenger bus. There was testimony that both vehicles were moving slowly at the time of the impact; also, that Mrs. Barton neared the scene at 45 miles per hour, but we are bound by the jury answer as to her speed. We may assume, as did the trial court, that the automobile moved forward into contact with the bus; also that, just prior thereto, the bus did bear to the right, as stated by the bus driver and several disinterested witnesses, to avoid a casualty. All testimony, except from plaintiff, described such swerve as slight and only incidental to the collision that immediately followed.

Appellant's many assignments of error and propositions in support, on analysis, present the following contentions: (1) Of no probative evidence in support of the negligence as charged; (2) that plaintiff's injuries were conclusively shown to have been caused by the act of a third person and not by the swerve of the bus; hence, there was a fatal variance between pleading and proof; (3) where the only alleged negligent act of defendant (swerving the bus) is shown to have run its course without causing any injury to plaintiff, an instructed verdict for defendant should have followed; (4) the element of causation essential to a recovery was absent, where the only act relied on by plaintiff, as the proximate cause of her injuries (the sudden and violent swerve of the bus from its course) did not, in fact, cause her to fall—the injuries being caused irrespective of any swerve, and conclusively by the impact of the Barton car; or, in event it be not conclusive that plaintiff's injuries were caused by an agency over which defendant had no control, and for which it was not responsible, yet, in all events, the evidence was such that the court and jury were put to conjecture and supposition in order to establish causation; or, it being just as inferable that the injuries were caused by an outside agency, as by defendant's operator, plaintiff has failed in necessary proof of proximate cause; (5) error in placing the burden of proof on unavoidable accident; (6) error in the refusal by the court of various defensive issues on new and independent cause.

We conclude the issues in the court's charge, concerning the movement of the bus and the cause of plaintiff's fall, were sufficiently raised by the testimony. As to the occurrence resulting in her alleged mishap, she testified on direct examination, in part:

"Well, we were going along, and I was looking out of the window, the right window; I was on the right side of the bus; and all at once, the bus swerved to the right and hit the curb, and that was the last I knew. * * *

"Q. Then what is the first thing you knew, after this occurrence, whatever it was out there? A. Well, I heard the motorman say, when I came to myself I heard the motorman say, 'Get the number of that car', and I didn't know what he meant; I just came to myself and was lying down in the front of the bus. * * *

"Q. Just describe what kind of a swerving, I believe you called it, this was in the bus; was it slow or gradual, or sudden? A. No, sir.

"Q. Or otherwise; just describe it, if you can? A. It was quickly; just swerved to the right quickly, and I was semi-conscious, I think, for a minute after he swerved and threw me out of the seat, until I woke up. * * *

"Q. Tell the jury whether or not the swerving of the bus and its stopping was usual or unusual? A. It was very unusual.

"Q. Did you or not have any advance knowledge of the fact that it was going to swerve or was going to stop? A. No, sir; I didn't."

The following excerpts are from plaintiff's cross-examination:

"Q. Do you know what caused the driver of the bus to swerve to the right? A. No, sir.

"Q. Do you know whether or not there was any other party ran into the bus or not? A. I didn't see anything.

"Q. You don't know what happened then? A. No, sir; I don't.

"Q. If I understand you right then, as far as your knowledge is concerned, you were riding in the bus and sitting on the right-hand side and all of a sudden, the next thing you know, you found yourself in the bottom of the car, is that right? A. Yes, sir.

"Q. And how you got there or what caused you to get there, you don't know? A. No.

"Q. Is that right? A. That's right. * * *

"Q. Which way did the bus swerve when you first observed it? A. To the right.

"Q. To the right, and can you tell the jury how much it swerved to the right? Do you know? A. Well, I don't know just exactly how far it would be from out in the middle of the street to the curb—that is how far it is.

"Q. After the bus swerved to the right, did the bus then come back to the left and head on down toward Jefferson Street? A. Yes, sir."

On the other hand, defendant's operator, in charge of the bus, and five other passengers thereon, swore, in effect, that its turn to the right was a feature of the threatened collision, and that plaintiff was caused to fall by the impact of Mrs. Barton's car and not perforce of any prior movement of the bus. Some defensive testimony even described the jar of the collision as slight. We think there was in the record, as a whole, evidence of probative force from which the jury could have answered the question of causation either way; and although the testimony may reasonably appear to preponderate in favor of the defense, aided to an extent by plaintiff's negative assertions, yet it was within the jury's peculiar province to determine otherwise. 17 T.J., Evidence—Civil Cases, Secs. 404–408, pp. 891–907.

We perceive no error in the form of issue No. 4, as given by the court; complaint being made that the burden was there placed on it to establish affirmatively the existence of unavoidable accident. Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956, 957 (Supreme Court adopted) is sufficient authority for our ruling; also see North East Texas Motor Lines v. Hodges, Tex.Civ.App., 141 S.W.2d 386, where an almost identical proposition is discussed and overruled.

Appellant's further propositions complain of the trial court's refusal to submit various issues involving Mrs. Barton's car, and as to whether the facts inquired about, if found by the jury, were not the new and independent cause of plaintiff's injuries. Issues 7 and 9 are typical, and read: (7) "Do you find from a preponderance of the evidence that an automobile was driven off of Melba Street into and against the center of the bus and on the left-hand side of same at the time and on the occasion in question?" (9) "Do you find from a preponderance of the evidence that the propelling of an automobile off of Melba Street into and against the center of the bus and on the left-hand side of same at the time and on the occasion in question was not a new and independent cause of the injuries, if any, sustained by plaintiff?"

In disposing of these immediate propositions, we must bear in mind that the question of plaintiff's own negligence was not raised; and that the record presents but two opposing theories: Either her injuries were due to the conduct of defendant's bus driver, or to the intervention of Mrs. Barton's car. Both of these elements were necessarily considered by the jury in the unavoidable accident issue; and likewise, was the second element involved in the given issues on sole proximate cause. Appellant now seeks to renew the same inquiry concerning the acts and omissions of the Barton car, in its refused issues on new and independent cause. We do not think it entitled to do so; the particular facts having already been submitted in another form. Williams v. Rodocker, Tex.Civ.App., 84 S.W.2d 556; Magnolia Petroleum Co. v. Owen, Tex.Civ.App., 101 S.W.2d 354; Dallas Ry. & Terminal Co. v. Little, Tex.Civ.App., 109 S.W.2d 289; Willis v. Smith, Tex.Civ.App., 120 S.W.2d 899; Weatherhead v. Vavithis,

Tex.Civ.App., 135 S.W.2d 1008. A similar point was before the Amarillo Court in Dallas Ry. & Terminal Co. v. Stewart, Tex. Civ.App., 128 S.W.2d 443, 445. It was there held: "Since the appellant relied upon the same event, the same circumstances and the same facts to establish its defense of new and independent cause as it did to establish its defense of sole proximate cause, it is our opinion that an affirmative submission of the latter defense would embrace every conceivable element of the former defense."

We observe no error in the proceedings of the trial court, and its judgment herein will be affirmed.

Affirmed.

BOND, Chief Justice (dissenting).

It is obvious from the record and recited testimony of the injured plaintiff, disclosed by the majority opinion, that the sudden swerving and stopping of the bus in question, resulting in plaintiff's being thrown from her seat and injured, were due to an unknown cause. Plaintiff relied exclusively upon the application of the doctrine of res ipsa loquitur to show negligence—no actual or positive negligence being shown.

It will be conceded that plaintiff established a presumptive or prima facie case of negligence on the part of defendant's bus operator, by virtue of the rule, res ipsa loquitur, casting upon defendant the burden of freeing itself from such imputation, if such may be established in a case of this kind. It is a general rule in this state that where a presumptive or prima facie case has been made against a defendant, it is incumbent upon defendant, to escape the effect of the doctrine, to introduce evidence to explain, rebut, or otherwise overcome the presumption or inference that the injury was due to its negligence. Sims et ux. v. Dallas Ry. & Terminal Co., Tex.Civ. App., 135 S.W.2d 142, 144, and cases there cited. There is some question whether the rule applies, where injury is the result of a sudden swerving or stopping of a bus on a crowded or congested street of a city. One entering an automobile may well understand that a certain amount of swerving and stopping is a necessary operation of such conveyance.

In the Sims case, recently decided by this court, the question was identical with the one presented here. In that case, after reciting the testimony of the injured plaintiff, that "the accident happened so suddenly she didn't know anything about it until after falling on the floor of the bus * * *", that she "is not in a position to say what caused the bus to jerk and stop. All she knows is that she was suddenly thrown forward from her seat onto the floor of the bus, and has never been certain as to just what did happen to cause it"; and after further reciting the rebuttal testimony of the defendant's bus operator, to the effect that "he did not stop or check the speed of the bus; that it was moving slowly when struck on the rear end by an automobile, which threw him forward against the steering wheel;" also reciting the testimony of two men passengers that "an automobile was driven against the rear of the bus, throwing them against the backs of the seats in front", Judge Looney, writing the opinion, tersely stated: "So, we think it obvious that, even if the rule res ipsa loquitur were applicable in the instant case, the burden of proof to establish negligence was not thereby shifted, and the inference or presumption of negligence, if one arose, having been rebutted by undisputed evidence, it was obligatory upon appellants to make out their case, and, having failed to produce any evidence whatever, tending to prove negligence, we do not think the court erred in directing the verdict, as was done."

Analogous are the facts in the instant case: The injured plaintiff said: "Well, we were going along, and I was looking out of the window, the right window; I was on the right side of the bus; and all at once, the bus swerved to the right and hit the curb, and that was the last I knew. * * * when I came to myself I heard the motorman say, 'Get the number of that car.'" To rebut imputation of negligence on the part of the operator in charge of the bus, if any was cast upon him by the testimony of the injured plaintiff, it must be held that the testimony of the operator and five other passengers rebutted such presumption; quoting from the majority opinion, they said she was "caused to fall by the impact of Mrs. Barton's car and not perforce of any prior movement of the bus". Thus, having failed to produce any evidence whatever of negligence, plaintiff failed to make out her case.

The only distinction between the Sims case, supra, and the instant case, aside from names, dates, amounts, etc., is that, in the Sims case, the sudden jerking and stopping of the street bus was caused by the impact of another automobile on the rear of the bus; while in the instant case, the

bus was caused to swerve and stop by the impact of Mrs. Barton's car on the side of the bus. Neither of the injured parties knew the cause of the movement of the bus, and, in both cases, the testimony is uncontradicted that the sudden and unusual movement of the busses was due to a collision with another car, and free of negligence on the part of the operator.

Obviously, the holding of the majority in the instant case is in conflict with the holding of this court in the Sims case, and the authorities therein cited. There is no reason assigned in the majority opinion to overturn our decision in the Sims case; and no fact is here shown to warrant a finding in conflict therewith. If, in the Sims case, the trial court correctly entered judgment for defendant, based on the failure of plaintiff to make out a case of negligence against the defendant, certainly error is glaring in the instant case. There is no negligence shown; therefore, plaintiff having failed to meet the burden resting upon her, the judgment of the court below should be reversed and judgment here rendered for defendant. So believing, I respectfully register a dissent.