No. 10855.

Court of Civil Appeals of Texas.
San Antonio.
May 21, 1941.

**YOUNGER BROS., Inc., v. ROSS et al.**

No. 11189.

Court of Civil Appeals of Texas. Galveston.
May 1, 1941.

Rehearing Denied May 29, 1941.

Further Rehearing Denied July 10, 1941.

Darden & Burleson, of Waco, for appellant.

Earl Cox and Burris & Benton, all of Houston, for appellees.

GRAVES, Justice.

This general statement, adopted by the appellees, is taken from the appellant's brief:

"This is a suit by Mrs. Nora Ross, individually and as guardian for her three minor children, and for the use and benefit of Mrs. Betty Ross, and by Texas Employers Insurance Association, as intervenor, seeking to enforce subrogation rights created by payment of workmen's compensation insurance to Mrs. Nora Ross and her three minor children, against Younger Bros., Inc., for pecuniary damage on account of the death of Charles N. Ross, in an automobile-truck accident, which occurred on the Houston-Beaumont Highway in Harris County, Texas, on March 21, 1939.

"Plaintiffs filed their suit in the district court of Harris County alleging that the death of Charles N. Ross was caused by various and sundry negligent acts and omissions on the part of Younger Bros., Inc., and its truck driver, and seeking pecuniary damage on account of the death of Charles N. Ross.

"Intervenor, Texas Employers Insurance Association, sought to recover its subrogation rights, alleging that it was the compensation insurance carrier for the employer of Ross and that it had paid Mrs. Ross and her children workmen's compensation insurance, and was entitled to recover the sum so paid, in the amount of $3,415.38 out of any judgment that might be had by the plaintiffs in the case.

"Younger Bros., Inc., filed its amended answer, consisting of a general demurrer, special exceptions, general denial, pleas of contributory negligence, new and independent cause, sole proximate cause, and sudden emergency.

"The case was tried to a jury and the jury returned its verdict on special issues.

"The court entered judgment in favor of all plaintiffs and against the defendant in the total sum of $25,000.00."

The appealed from judgment was rendered alone upon the jury's verdict in response to the 67 special issues submitted, the court having made no additional findings of its own from the evidence; the court did, however, thus apportion the total $25,000 damages, as found by the jury, among the several appellees:

"The amount of this judgment, to-wit, $25,000.00, is here now apportioned between the plaintiffs and the intervener as follows:

"To the plaintiff, Mrs. Nora Ross, in her individual capacity, the sum of $17,500.00;

"To the use of plaintiff, Mrs. Betty Ross, suing herein by and through the plaintiff, Mrs. Nora Ross, the sum of $1500.00;

"To the plaintiff, Mrs. Nora Ross, as guardian of the person and estate of the minor, Frances Louise Ross, and for the use and benefit of such minor, the sum of $416.66;

"To the Plaintiff, Mrs. Nora Ross, as guardian of the person and estate of the minor plaintiff, Harold Eugene Ross, and for the use and benefit of such minor, the sum of $1216.67;

"To the plaintiff, Mrs. Nora Ross, as guardian of the person and estate of the minor plaintiff, Charline Ross, and for the use and benefit of such minor, the sum of $1216.67;

"To the intervener, Texas Employers Insurance Association, the sum of $3500.00."

Appellant inveighs against the judgment so adverse to it below through 15 propositions of law, the first and third of which challenge the sufficiency of the evidence to support the respective findings of the jury under grouped special issues 14 to 16, inclusive, and 29, 32, 37 and 39, inclusive, on the ground that each and all of them "are contrary to the undisputed evidence and to the overwhelming weight and preponderance of the evidence."

■ None of these several assaults upon the verdict can be sustained; on the contrary, it is held, after a painstaking examination of the statement of facts, that no one of these findings was either contrary to the undisputed evidence, or to its overwhelming weight and preponderance; the verdict, therefore, insofar as it rests upon any of them, must here be accepted as reflecting the facts developed upon each and all those features of the cause.

A brief resume of such two groups of resultant facts is this:

Under issues 14 to 16, inclusive: "The driver of the appellant's truck could have stopped the same after it came into contact with the car which Charles N. Ross was driving, and before such truck pushed and shoved the car mentioned from the highway and into the telephone post, standing on the east side of the highway, and such failure was negligence, and a proximate cause of the death of Charles N. Ross."

Under 29, 32, 37, and 39: "Charles N. Ross did not operate his car on the left side of the highway with respect to the direction in which he was driving at and prior to the collision in question, and he did not fail to operate his car on the right-hand side of the highway at a time when the left-hand side of the highway was not clear and unobstructed for at least 50 yards ahead."

It would be going beyond the requirements for this Court to undertake to even recapitulate the great bulk of the testimony supporting these two consolidated findings, hence that will not be done. The collision occurred on a foggy morning, on U. S. Highway 90, about 3 miles from the city limits of Houston toward Beaumont, by the head-on coming together of appellant's oversized and overloaded truck and trailer, being driven in a southerly direction by its employee, Summers, and the light Ford coupe, being driven by the deceased, Charles N. Ross, in a northerly direction, the truck "stopping such small car in its tracks and then pushing and shoving it backward and down the highway in the direction from which it had been coming for a distance of some 75 feet; pushing such small car off of the highway on the left-hand side thereof, in the direction in which the truck was going, shoving such small car across the barrow-ditch, and up against a telephone post, the truck totally crushing and demolishing the car, running over it and flattening it out, and the forward motion of the truck not being arrested until its bumper struck the telephone post, breaking the same off, the truck finally coming to rest with its bumper against the telephone post. After the wreck, the bodies of Charles N. Ross and a man who had been riding with him in the car were found in the wreckage, with the bumper of the truck resting against their chests."

It is true Summers testified that his airbrakes had gone out with the first impact between the two cars, but it is undisputed that his truck was also equipped with another wholly separate and unconnected set of emergency mechanical brakes, and, while he himself further claimed that he kept trying to apply these emergency brakes with his right hand between the first impact and the final crash into the telephone pole, there was plenty of testimony to the contrary from the appellant's own witness, Bunch, to the effect that he did not; neither did he ever, by his own confession, at any time blow his horn, although he admitted that initially he had seen the Ford coupe, with its lights burning, approaching him from a distance within which he could have stopped prior to the first impact; indeed, the witness Bunch, who was in a car going in the same direction and behind the Ford coupe, both of which were approaching appellant's truck, on cross-examination testified, in substance, as follows: "That he saw the truck pushing the car ahead of it in his direction; that he found glass, dirt and material on the pavement showing

where the accident had occurred, and that it was 75 feet from such point to the place where the truck finally came to rest; that when he first saw it the accident had already happened; that he continued watching it and the big truck continued pushing the little Ford ahead of it for 75 feet until it finally got to the place where it stopped, and when it finally came to a stop it had pushed the Ford into a telephone post. That as the big truck was pushing the Ford down the highway toward him that 75 feet that he saw, he could see the driver of the big truck and see what he was doing. That the driver of the truck 'had one hand on the steering wheel and was leaning over to his left with his left one down.' That he had his right hand on the steering wheel, and 'was leaning to the left with his left shoulder lower than his right.' That he did see the driver of the big truck; there was just one man on the big truck; that he had his right hand on the steering wheel, and was leaning to his left. That he was positive that when he saw the truck coming down the road the truck driver had his right hand on the steering wheel holding the steering wheel, and was leaning to his left. That he was leaning toward the left with his right hand on the wheel. That he didn't see his left hand."

The quoted testimony alone, together with the setting in other respects shown to have existed, is sufficient to support the two findings here under review.

A similar result is found in the testimony under this second group of issues. It is true Summers testified that his truck was on its own right-hand side of the road before and at the time of the collision and that the deceased's coupe was on its wrong side thereof; but there was ample testimony the other way on both features—that is, to the effect that the deceased was not operating his car on the wrong side of the road at any time, but also that the appellant's truck was partly over on its wrong side of the middle black line of the road, as it first approached the coupe at the time it so did, and that it never at any time got back wholly upon its own side thereof, but, as shown by the undisputed evidence, after the first impact, without stopping, drove the smaller car, with terrific momentum, from the point of initial contact therewith the entire 75 feet across the highway on its own left side thereof and into the telephone pole, on top of the Ford car, as shown supra.

Appellant attacks no others of the 67 findings so made than the two groups, the boiled-down gist of which has been given, to the ultimate purport that—on the one hand, appellant's truck could have been stopped after the first contact and before it pushed Ross' coupe into the telephone post, and, on the other, that Ross did not operate his car on his left-hand side of the highway at any material times—although the preceding 13 of such total findings, together with various succeeding ones, convicted appellant not only of all the material acts of original negligence charged by appellees against it, but also of failing to meet the new duties so found to have been imposed upon it by its discovery of Ross' continued peril after the first impact, while at the same time acquitting Ross of any acts of contributory negligence, despite a veritable cross-examination of the jury on well-nigh every conceivable condition under which he was charged with such dereliction.

■ In other words, under the developed facts of the whole cause, it is plain that, in any event, under the two consolidated findings supra, and the substantive law of discovered peril as applied thereto, its other declared-upon defenses, together with all related findings of the jury, became immaterial, and appellant became liable, irrespective not only of all issues of primary negligence, but also of contributory negligence upon the part of Ross; Montgomery v. Houston Elec. Co., 135 Tex. 538, 144 S. W.2d 251; St. Louis, B. & M. Ry. Co. v. Cole, Tex.Com.App., 14 S.W.2d 1024; Dallas Railway & Terminal v. Bankston, Tex.Com.App., 51 S.W.2d 304.

■ This conclusion really obviates the further discussion of substantive law; but comment upon appellant's subsidiary contention under its first proposition, to the effect that—because the jury found under succeeding issue 17 that Ross would not have been killed if appellant's truck had stopped after first striking and before pushing his car into the telephone post—no other issues than 14 to 16, inclusive, could support the judgment, hence the court should have ignored all the other findings of negligence against the truck driver, both originally and after his discovery of the deceased's peril, and rendered judgment in appellant's favor.

This court feels that it can do no better than quote this answer to that contention from the appellees' brief, with which it is in full accord, to-wit: "Even though the

jury believed and found that after the initial collision the driver could have stopped appellant's truck and by stopping at such time could have prevented killing Ross, how could it be said that this relieves such driver from all negligent acts found by the jury to have been committed by him prior to the collision and proximately causing it? But for the original negligent acts on his part the collision would not have occurred in the first instance, and the fact that after its occurrence, brought about by his negligent acts, he could still have saved the situation and prevented killing Ross, which he failed to do, certainly can not be said to have the effect of erasing from the picture all negligent acts of the driver prior to the initial collision, and confining the inquiry to his acts between the time of the initial impact and the time the small car was crushed against the telephone post."

As affects the procedural infirmities appellant contends for, none is thought to involve prejudicial error.

■ The first of these to the effect that, after the jury's verdict had been rendered, accepted by the court, and its members discharged as jurors, appellees' attorney had advised certain jurors in the hallway of the court-room not to talk with anyone about what had transpired during this trial, because their statements might be misused, and they themselves might be dragged back into that court in an attempt to show that they had been guilty of misconduct while serving as jurors during this trial—even if that matter had been properly, according to the rules of evidence, shown to have in fact occurred—it would not have required a new trial, for these two main reasons:

(1) The entire incident was extrajudicial, and, in essence, a mere inter sese conversation between private citizens, of which neither the trial court nor this court could properly take cognizance. Art. 2234, Rev. Civ.Stat.1925; Local No. 65 Musicians, etc., v. Sammons, Tex.Civ.App., 127 S.W.2d 226; Parks v. Missouri, K. & T. R. Co., Tex.Civ.App., 19 S.W.2d 373.

(2) This alleged incident was presented for the first time in the motion for a new trial below; appellant could have subpoenaed all the jurors, made witnesses of them on that hearing, and officially required them to disclose everything that occurred in the jury-room with reference to their conduct; but this record undisputedly shows that neither it nor any of its representatives made any effort to discover misconduct on the part of the jury, nor that any juror was either interrogated as to, or refused to make a full disclosure of, anything that occurred in the jury-room.

Obviously, it is thought, nothing cognizable by the trial court or this court is therein presented; neither is the holding by the Waco Court in Traders & General Ins. Co. v. Watkins, Tex.Civ.App., 94 S.W.2d 843, upon which appellant relies, applicable to the given facts here; there the instruction to the jury not to talk after the rendition of their verdict was given by the trial judge to the jury after they had been empaneled; even then, the appellate court held no reversible error to have been presented, since, after the trial, appellant's counsel were not shown to have made any effort to discover misconduct, nor did it appear that any of the jurors had refused to make full disclosures.

■■ The admission of photographs of the scene of this accident, appellant complains of, was not reversible error, since it appears they were properly authenticated as correctly representing the position of the two cars on the highway after the accident; hence they were material and admissible as tending to show the speed of appellant's truck, whether or not it was being operated on its wrong side of the highway, and whether or not it was, or reasonably could have been, stopped after the initial collision and before it struck the telephone post; 17 Tex.Jur., page 733; Southern Pac. Co. v. Eckenfels, Tex.Civ.App., 197 S.W. 1003; Southern Transport Co. v. Adams, Tex.Civ.App., 141 S.W.2d 739.

■ Moreover, no reason appears for not holding these photographs to have constituted "written evidence", within the meaning of R.S. Article 2193, and therefore not improperly permitted to be taken with the other papers into the jury-room for their consideration upon their retirement. 41 Tex.Jur., p. 105; Texas Employers' Ins. Ass'n v. White, Tex.Civ.App., 68 S.W.2d 511.

■ The witness Cordell's testimony, that the deceased's body was "mashed and mangled" when he saw it in the wreck after the accident, was not improperly admitted; this for the reason that such testimony was clearly material upon the question of whether or not Ross had been killed in the initial collision, or at the telephone post; furthermore, it appears that similar testimony from other witnesses had been let in without ob-

jection from appellant. 41 Tex.Jur., Sec. 141, p. 902; Howard v. Richeson, 13 Tex. 553; Sanger Bros. v. Craddock, Tex.Sup., 2 S.W. 196; Panhandle National Bank v. Emery, 78 Tex. 498, 15 S.W. 23; Wallis v. Schneider, 79 Tex. 479, 15 S.W. 492.

■ Since the appellees admitted in open court that appellant did have a permit from the State to operate its truck, loaded as it was, the trial court's refusal to admit in evidence a photostatic copy of its permit, as tendered by appellant, if error at all, was wholly an immaterial one.

■ Witness Robert Smith's testimony that appellant's driver, Summers, had, after the accident, stated that, as the Ford car was being pushed down the highway, Mr. Ross, its driver, shouted, "Oh My God, man, stop this truck", which had been admitted only for the purpose of impeaching Summers as a witness, was in effect repeated by appellees' attorney in his opening argument to the jury; appellant objected to it, whereupon the appellees' attorney requested the court to instruct the jury to disregard it, which the court did. In the circumstances, it is thought that such withdrawal by appellees' counsel, followed by a prompt and careful instruction to the jury not to consider it, rendered the statement harmless. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054.

■ In view of all the other submitted issues, both as to primary negligence and discovered peril, as well as its correct definitions of "negligence" and "ordinary care", the court did not err in refusing to submit, on its request, a further one inquiring whether the appellant's driver "was acting under an emergency at the time and place in question", coupled with an instruction that "by the term 'emergency' is meant a condition arising suddenly or unexpectedly and not being proximately caused by any negligent act or omission on the part of appellant's driver, and which called for immediate action on his part without time for deliberation," because "acting in an emergency" is included in the issues of primary negligence and discovered peril. 30 Tex. Jur., Sec. 40, p. 690; Hooks v. Orton, Tex. Civ.App., 30 S.W.2d 681.

■ The trial court did not err in refusing to submit to the jury an issue inquiring whether they found that a fog in existence at the time and place of the accident was not a new and independent cause of the accident complained of, such issue having been covered by the court's submission of the issue of unavoidable accident and an additional issue as to whether such fog was not the sole proximate cause of the collision. Dallas Ry. & Terminal v. Stewart, Tex.Civ.App., 128 S.W.2d 443; Reeves v. Tittle, Tex.Civ.App., 129 S.W.2d 364; Weatherhead v. Vavithis, Tex.Civ. App., 135 S.W.2d 1008; Dallas Ry. & Terminal Co. v. Latham, Tex.Civ.App., 143 S.W.2d 824, 825.

■ The undisputed evidence having shown that Mrs. Ross did sustain some loss because of her husband's death, the virtual assumption of that as a fact in special issue No. 23, on the amount of damages, as given by the court, was not erroneous; nor was the omission of the words "if any" from the inquiry therein of "What sum of money, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate the plaintiff, Mrs. Nora Ross", objectionable as being on the weight of the evidence, because the court did not propound the usual inquiry as to what sum of money would compensate the wife for *the death* of her husband, but, instead, specifically and directly inquired what sum would compensate her "for the loss sustained, if any, by her as a direct and proximate result of the death of her husband". Texas & Pac. R. Co. v. Gurian, Tex.Civ. App., 77 S.W.2d 274; Eastern Texas Electric Co. v. Baker, Tex.Civ.App., 238 S.W. 335; Texas & New Orleans R. Co. v. Kveton, Tex.Civ.App., 48 S.W.2d 523.

■ Appellant also challenges, as being without support in the evidence, the court's allowance of $1,500 damages to the deceased's mother, Mrs. Betty Ross; after careful consideration of this complaint, however, it is concluded that this answer thereto in the appellees' brief is sound and should be approved, which accordingly is done, to-wit: "There being testimony in the record that the deceased was 31 years of age; that he left surviving him his wife, three children and his mother; that he was earning at the time of his death $100.00 per month, but had earned and was capable of earning $250.00 per month; that he supported his wife and children, and that he contributed $10.00 per month to his mother, Betty Ross, following his father's death, and the mother, Betty Ross, being in the court room throughout the trial so that the jury could and did observe her and her apparent age, though she did not take the

stand, the testimony in the record was sufficient to support the finding of the jury that the mother had been damaged in the sum of $1500.00 because of the death of her son." Texas P. Ry. Co. v. Martin, 25 Tex.Civ. App. 204, 60 S.W. 803; Red Arrow Freight Lines v. Smith, Tex.Civ.App., 93 S.W.2d 495; Southern Pac. Co. v. Winton, 27 Tex. Civ.App. 503, 66 S.W. 477; San Antonio & A. P. R. Co. v. Englehorn, 24 Tex.Civ. App. 324, 62 S.W. 561, 65 S.W. 68.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal. The judgment will therefore be affirmed.

Affirmed.